## CECILE INDUSTRIES, INC.

### v.

### The UNITED STATES.

### No. 357–83C.

United States Claims Court.

June 21, 1983.

---

4. Interest accrues from March 1, 1979. *Brookfield Construction Co. v. United States,* 661 F.2d 159, 168 (Ct.Cl.1981).

Marc Lamer, Philadelphia, Pa., for plaintiff. Stassen, Kostos & Mason, Philadelphia, Pa., of counsel.

Jane W. Vanneman, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. Walter Thomas, Defense Logistics Agency, Cameron Station, Alexandria, Va., of counsel.

## OPINION

WIESE, Judge:

This matter came before the court on plaintiff's motion for injunctive and declaratory relief and the Government's opposition thereto. Following the submission of briefs and oral argument, the court concluded that, while it had jurisdiction over the matter (a point which the Government had disputed), plaintiff, nevertheless, was not entitled to prevail. Accordingly, by order of June 10, 1983, the court directed dissolution of a previously-entered temporary restraining order and, at the same time, noted its final determinations on the several points in issue.

Though the controversy is now moot (plaintiff not having sought an appeal) we note in this opinion, the issuance of which was contemplated by the order of June 10, 1983, a change of view on the jurisdictional question. Upon further reflection, the court now concludes that the complaint should have been dismissed for lack of jurisdiction rather than for lack of merit.

## FACTS

Plaintiff, Cecile Industries, Inc. ("Cecile") is a small business corporation engaged in the manufacture of clothing and equipage items for various Government procurement agencies. On April 8, 1983 Cecile had submitted the lowest responsive offer to a solicitation that had been issued by the Defense Personnel Support Center ("DPSC" —a field arm of the Defense Logistics Agency) calling for the manufacture of approximately 300,000 pair of military "wet weather" trousers.

Following receipt of Cecile's offer, on April 14, 1983 the agency's contracting officer, upon review of Cecile's performance record and quality history, determined that the company was nonresponsible. Accordingly, he proposed to reject Cecile's offer for failure "to apply tenacity and perseverance to do an acceptable job; for lack of a satisfactory record of integrity; and, for lack of capacity based on poor past performance."

As required by regulation, this tentative determination and the findings in support of it, were referred to the Small Business Administration ("SBA") for a final determination as to whether or not a so-called "Certificate of Competency" should be issued in favor of Cecile notwithstanding the contracting officer's adverse findings.[1] (The record indicates that during the immediately preceding six month period, SBA had concurred in the proposed rejection, by the same contracting agency, of at least two of the four bids that had been received from Cecile on various procurements in that time.)

Contemporaneous with the events herein described, there had been progressing within the procuring agency a contractor review action that culminated in the issuance to Cecile, on May 17, 1983, of a formal "notice of proposed debarment." This notice, issued in accordance with the authority set out in Part 6 of the General Provisions of the Defense Acquisition Regulations ("DAR") (previously the Armed Services Procurement Regulations), advised Cecile of the facts and reasons upon which the proposed debarment was predicated. Further, the notice stated: "I [the Secretary's desig-

---

1. Part 7 of the General Provisions of the Defense Acquisition Regulations ("DAR") specify in 1–705.4(a) (32 C.F.R. § 1–705.4 (1982)) that "SBA has statutory authority to certify the competency of any small business concern as to all elements of responsibility * * *." Paragraph (c) of the same section directs that "[i]f a bid or proposal of a small business concern is to be rejected because the contracting officer has determined the concern to be nonresponsible, the matter shall be referred to the appropriate SBA field office * * *."

nee] view Cecile's willful failure to perform in accordance with the terms of Government contracts and Cecile's history of failure to perform and of unsatisfactory performance of Government contracts as indications of Cecile's lack of business integrity and further as indications of Cecile's lack of present responsibility to be a Government contractor, and as providing a basis for debarment pursuant to DAR § 1–605.2(b)."

The notice went on to advise of the procedural rights available to Cecile to contest the proposed debarment, the consequences of debarment (assuming that became the final result of further proceedings) and that pending a decision on debarment "bids or proposals will not be solicited from, contracts will not be awarded to, existing contracts will not be renewed or otherwise extended for, and subcontracts requiring Government approval will not be approved for Cecile by the Department of Defense * * *." [2]

The following day, May 18, 1983, the procuring agency requested SBA to suspend processing Cecile's application for a competency certification relative to the instant solicitation. This request was agreed to; the next week SBA advised Cecile that "[n]o further action will be taken regarding this case pending formal notification from the contracting officer as to the disposition of this procurement."

A complaint seeking declaratory and injunctive relief was filed in this court on June 1, 1983. The focus of the complaint was upon the automatic disqualification from award that accompanied the notice of proposed debarment. This regulation-dictated "ineligibility" [3] is seen by Cecile as encompassing a double-fault: first, a usurpation of SBA's exclusive authority to render all competency determinations with re-

spect to small businesses; second, a constitutionally impermissible deprivation of the bidder's "liberty interest" by allowing a finding of lack of integrity to have operative effect in advance of the bidder's opportunity to be heard on the issue. The Government has answered these arguments on the merits and, in addition, has moved to dismiss the suit for lack of jurisdiction. As noted at the outset, jurisdiction is the dispositive issue in the controversy.

## DISCUSSION

In Title 28 of the United States Code, section 1491, as amended by the Federal Courts Improvement Act of 1982, Congress declared that this court, in order "[t]o afford complete relief on any contract claim brought before the contract is awarded * * shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief." 28 U.S.C. § 1491(a)(3) (Supp. V 1981). Cases deciding the scope of this jurisdictional grant have, to date, defined it as being limited to litigants who (i) may claim an implied contractual relationship with the United States on the basis of their submission of a bid in response to a Government solicitation, *Quality Furniture Rentals, Inc. v. United States,* 1 Cl.Ct. 136 (1983) (KOZINSKI, C.J.); *Indian Wells Valley Metal Trades Council v. United States,* 1 Cl.Ct. 43, 553 F.Supp. 397 (1982) (WIESE, J.) and (ii) assert as their basis for injunctive relief a breach of that implied contractual relationship based upon the Government's alleged failure to have adequately and fairly considered their bid. *Ingersoll-Rand Co. v. United States,* 2 Cl.Ct. 373 (1983) (KOZINSKI, C.J.). This view of the statute—that

---

**2.** The disqualification from award that was included as part of the notice of proposed debarment was not an exercise of administrative discretion but a requirement of regulation. Defense Acquisition Circular No. 76–41 (December 27, 1982) provides in 1–605.3(c)(7) that where a suspension is not in effect, then the notice of proposed debarment must advise the contractor "that bids or proposals shall not be solicited from, contracts shall not be awarded

to, existing contracts shall not be renewed or otherwise extended, and subcontracts shall not be consented to or approved for the contractor by any Department pending a debarment decision unless the Secretary concerned or his authorized representative states in writing the compelling reason to do so."

**3.** *See* n. 2, *supra.*

it was meant to address only the so-called "bid protest" actions—was endorsed in *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983).

Though the plaintiff here purportedly meets these twin criteria—a bidder seeking to restrain the award of a contract on the ground that its bid had not been fairly and honestly considered—the Government nevertheless urges dismissal of the suit on the ground that it lies beyond our jurisdiction to decide. While the court was initially of a different view in the matter, further reflection has persuaded us that plaintiff does, indeed, seek its relief in the wrong forum.

In arriving at this conclusion, we start on an historical note. In the bid protest suits that had been heard by this court prior to the enlargement of its powers (damage suits for the recovery of bid preparation costs), the operative events focused always upon the actions of the Government procurement officers and their claimed failure to have accorded the prospective contractor's bid fair consideration in accordance with the dictates of a relevant statute or regulation. *See, e.g., Continental Business Enterprises, Inc. v. United States,* 196 Ct.Cl. 627, 452 F.2d 1016 (1971); *Keco Industries, Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233 (1970); *Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409 (1956). These suits, as we have said, were grounded upon the notion of an implied contract; hence enforceable responsibilities and fair boundaries for administrative discretion made up their content.

And here, as with the parallel suits for injunctive relief brought before the district courts, it was recognized that the vitality of the procurement process dictated that relief be withheld unless the action of the procurement officials was shown to have been without "reasonable basis", *Continental Business Enterprises, Inc. v. United States,* 196 Ct.Cl. at 637, 452 F.2d at 1021, or a "clear violation of duty". *M. Steinthal & Co. v. Seamens,* 455 F.2d 1289, 1303 (D.C. Cir.1971).

Now the relevance of these observations to the problem at hand is that, in the subsequent enlargement of the court's powers, Congress intended no sweeping expansion of jurisdiction. To the contrary, the grant of equitable authority was perceived as but a modest addition to the court's contract authority, its purpose being only to "avoid the costly duplication in litigation presently required when a citizen seeks both damages and equitable relief against the Government. S.Rep. No. 275, 97th Cong., 1st Sess. 22, *reprinted in* 1982 U.S.Code Cong. & Ad. News 11, 32. The legislative history takes care also to point out that, as the custodian of this equitable power, the court would be expected to "utilize the authority conferred upon it * * * only in circumstances where the contract, if awarded, would be the result of arbitrary or capricious action by the contracting officials, to deny qualified firms the opportunity to compete fairly for the procurement award." *Id.* at 23, 1982 U.S. Code Cong. & Ad.News at 33.

Hence, from the language of the statute and its legislative commentary, it is clear that the introductory clause to 28 U.S.C. § 1491(a)(3)—"to afford complete relief on any contract claim brought before the contract is awarded"—signals a Congressional purpose to bestow upon this court equitable jurisdiction with respect to the same class of suits for which, under prior law, only the recovery of bid preparation costs could have been sought.

■ This then brings us to the case at hand. Cecile's bid was disregarded by the Government, not for lack of adequate and fair consideration on the part of the contracting officer but rather by force of a regulation which decreed plaintiff's disqualification as an eligible bidder. Consequently, plaintiff cannot (and does not) allege, on the contracting officer's part, any violation of a contract duty owed but, instead, asks that the court declare the offending regulation unconstitutional on due process grounds for its failure to provide prospective contractors with an opportunity to be heard before declaring them ineligible for award. Thus the claim on its face reaches

beyond the limits of our historical bid protest jurisdiction and thus also beyond the present-day limits of our equitable authority in these matters.

■ The court recognizes, of course, that the injury suffered here is indistinguishable, economically speaking, from say, a contracting officer's arbitrary refusal to consider a bid. But injury suffered by a bidder at the hands of the procuring agency is not alone the test. The linchpin of our jurisdiction is the "procuring agency's enforceable responsibility", *Keco Industries, Inc. v. United States,* 203 Ct.Cl. 566, 577, 492 F.2d 1200, 1205 (1974), to read or evaluate a bid fairly and honestly in accordance with prescribed procurement guidelines. Plaintiff's grievance is not of this sort; its challenge is to the regulation as written and not to the manner in which it has been applied.

■ Nor will it do to say that a bidder is as much entitled to procedural fairness in the evaluation of its status (under the debarment regulations) as it is to substantive fairness in the evaluation of its bid. While the statement is obviously true, it offers no answer to the jurisdictional difficulty present here. The implied contract theory underlying our equity jurisdiction can logically extend only to a recognition and enforcement of those duties and expectations that make up the content of the bargain from the start. The procuring agency's commitment—its implied promise, in other words—is to fairly apply the regulations bearing on the evaluation of the offer and/or the offeror in place at the time the bid goes forward; it is not that every such regulation will necessarily be fair. The last presents an issue substantively independent of the contractual relationship; hence it may only be vented in the district court. *See Megapulse, Inc. v. Lewis,* 672 F.2d 959 (D.C.Cir.1982).

■ We have no jurisdiction in this case for "[w]hile statutes and regulations pertaining to the bid solicitation process require the United States to structure bids fairly and in a manner designed to assure the lowest cost, these provisions create stat-utory rather than contractual obligations." *Ingersoll-Rand Co. v. United States,* 2 Cl.Ct. 373 at 376 (1983) (KOZINSKI, C.J.).

CONCLUSION

For the reasons given herein, the order entered in this case on June 10, 1983 is (i) modified to the extent that it had denied defendant's motion to dismiss for lack of jurisdiction, and (ii) vacated to the extent it had allowed, in part, defendant's motion for summary judgment.

IT IS ORDERED that defendant's motion to dismiss be granted and that the judgment dismissing the complaint be amended to reflect a dismissal for lack of jurisdiction.