**AMERICAN HOIST & DERRICK, INC., LUCKER DIVISION**

v.

**The UNITED STATES.**

No. 427–83C.

United States Claims Court.

Aug. 12, 1983.

Branko Stupar, of Faulkner, Shands & Stupar, Washington, D.C., for plaintiff.

Eileen P. Fennessy, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

OPINION

COLAIANNI, Judge:

Plaintiff, a disappointed nonbidder having a long-established technical position in the field of cable grips and hydraulic cable pullers, on June 28, 1983, filed a pre-award complaint seeking to temporarily restrain and preliminarily and permanently enjoin defendant from opening bids and/or making an award under a solicitation for bid. In addition, plaintiff sought the return of allegedly proprietary drawings of its cable grip which defendant allegedly distributed to potential bidders. Defendant has moved to dismiss the complaint on the grounds that:

(1) The court does not have jurisdiction over the subject matter of the complaint; or

(2) There are no material facts in dispute and it is entitled to judgment as a matter of law.

After a careful review of the briefs of the parties, and after due consideration being given to the testimony of witnesses presented on behalf of the plaintiff, it is concluded that plaintiff did not enter into an implied-in-fact contract with the defendant to permit it to bid on the solicitation forming the subject matter of plaintiff's complaint.

## Background Facts

On April 25, 1983, defendant, through its agency, the Naval Surface Weapons Center of the Department of the Navy, issued Solicitation No. N60921–83–B–A101 for hydraulic cable pullers. Pursuant to Defense Acquisition Regulations 1–706.1 and 1–706.-5, the contracting officer had determined that this procurement was suitable for a small business set aside. Lucker is not a small business, and thus was precluded from bidding.

On June 6, 1983, plaintiff wrote to the contracting officer of the Naval Surface Weapons Center and protested the issuance of the bid solicitation. Plaintiff's protest was grounded on the following points:

(1) As part of this solicitation, the Naval Surface Weapons Center has distributed to the public drawings containing proprietary data which were submitted in confidence by Lucker to Navy engineering and testing contractors, in reliance on assurances given Lucker by Navy personnel that Lucker would be able to bid on the contract and that it would be the sole source of the cable grips; and

(2) This solicitation limits bidding to small businesses, contrary to statements made by Navy personnel to Lucker since 1972, on which Lucker relied in agreeing to release the proprietary data.

The Navy, by letter of June 13, denied plaintiff's protest because its investigation failed to turn up any evidence of the proprietary data which plaintiff had alluded to, and, also, because the Navy's design was arrived at through "reverse engineering processes" and the inclusion of design modifications where necessary to meet Navy requirements. Regarding the small business set aside, the Navy informed plaintiff that Defense Acquisition Regulation 1–706.5 provided for such action if—

[T]he contracting officer determines that
 * * *

(i) offers will be obtained from at least two responsible small business concerns offering the products * * * ; and

(ii) awards will be made at reasonable prices * * *.

On June 23, 1983, plaintiff filed a protest with the Comptroller General which substantially conformed to its June 6 protest to the contracting officer. This protest is, as far as is known, still pending before the General Accounting Office.

Bids submitted pursuant to the solicitation were scheduled to be opened on June 28, 1983. On that date, plaintiff filed this action for a temporary restraining order and a preliminary and permanent injunction against the opening of bids and the award of a contract pursuant to the solicitation. In addition, plaintiff sought to recover all drawings of the cable grips from potential bidders.

Following a brief telephonic conference on June 28, 1983, counsel were ordered to attend a court session later that day. At that session, the court established that the opening of bids was of no consequence to plaintiff's position since (1) plaintiff's allegedly proprietary data had already been distributed by defendant and thus the opening of the bids would have no impact on this issue, and (2) the contracting officer did not intend to award the contract within the next 10 days. Plaintiff's motion for a temporary restraining order was therefore denied. Counsel were told to prepare briefs and memoranda of law on the subject of the court's jurisdiction, and a hearing on the motion for a preliminary injunction was ultimately set for July 7 and 8, 1983. In

the meantime, on July 1, defendant filed a motion to dismiss and an alternative motion for summary judgment.

Lucker Manufacturing Company, a division of American Hoist & Derrick, Inc., (Lucker) has for some years designed and manufactured a cable grip that has received considerable recognition and notoriety in its field of use. The grips are capable of braking and holding steel wire cables having dimensions between 1⅝" and 2" under weights of up to 200,000 lbs. Mr. Lucker developed the grip at his own expense many years ago, and, although no patents covering the design were ever obtained, Mr. Lucker and the Lucker Manufacturing Company, and now American Hoist and Derrick, Inc., have treated it as a proprietary product.

It appears that the defendant's first contact with Lucker dates back to 1972. On June 6 of that year, the "Sidney Smith" sank in the Detroit River, closing this important channel to all shipping. In the course of the effort to reopen the channel, a salvage expert who was familiar with Lucker suggested the possibility of using a hydraulic cable puller, of which the cable grip was a key ingredient, to help in the operation. As a result, the Navy ordered six cable pullers from plaintiff.

The usefulness of cable pullers for salvage work having been established, the Navy was interested in having the item tailored for its particular needs. The Navy informed the plaintiff of its intention and even discussed the design project with Mr. Lucker.

In the main, defendant's effort appears to have been confined to reverse engineering the cable pullers which it had purchased from the plaintiff. This amounted to little more than disassembling the units and making the necessary drawings and measurements of the parts to enable the production of additional units. There were, however, limited modifications made to the original design and these were, for the most part, made for the Navy by Batelle Institute.

Following the preparation of the necessary drawings, the modified cable pullers were built by Hawthorne Manufacturing Company, and these units were then tested by Tracor Marine & Crowley Marine. Although plaintiff's complaint, brief in support of its application for a temporary restraining order, and brief of July 1, 1983, claim that Mr. Lucker had cooperated and worked closely with the Navy during the redesign, fabrication and testing of the Navy's cable puller, his testimony at the July 7 trial session was anything but convincing.

It appears that plaintiff never supplied the defendant with any construction drawings of its cable grip or cable puller. It also appears that during this period plaintiff continued to sell its cable grip to the Navy. When pressed to explain just what information he supplied to defendant's design efforts, Mr. Lucker pointed out that the part dimensions and drawings were substantially the same as his. While he was careful not to suggest that these were copied from his drawings, he did feel that he may have supplied some metallurgical information to defendant, although even with regard to this latter type of information, Mr. Lucker's testimony was not too precise.

The testimony indicates that the cable grip and the hydraulic cable puller supplied to the Navy were of standard, off-the-shelf design. The proprietary cable grips, although modified in some detail over the years, incorporated the basic design that had been sold by plaintiff over the past 30 years. The testimony does not convincingly demonstrate that plaintiff disclosed anything of a substantial proprietary nature to defendant.

In sum, plaintiff's allegation of the Navy's utilization of Mr. Lucker's expertise for some 11 years, from the 1972 initial contact until the time of the solicitation at issue, appears highly exaggerated and without detailed support.

Mr. Lucker and his Washington, D.C., sales representative also testified regarding numerous discussions and contacts that they had with a number of Navy employees regarding the cable grip. Unfortunately, no

testimony was offered to show that any of these individuals had authority to bind the defendant or, equally important, that any of these individuals ever agreed that plaintiff would be given an opportunity to bid on any solicitation concerning the Navy's modified cable puller in exchange for plaintiff's proprietary data.

### Discussion

Defendant has made a motion to dismiss and has alternatively moved for summary judgment. In the main, defendant argues that this court is without jurisdiction to issue injunctive relief because the plaintiff was not a bidder for the contract. Defendant specifically questions whether this court has jurisdiction to enjoin the award of a contract on the basis of an alleged implied-in-fact contract which would have permitted plaintiff to bid on that contract and designated the plaintiff as a sole-source supplier of the key component of that contract, in return for plaintiff's furnishing proprietary information about the component. Defendant also contends that plaintiff, even assuming the court has jurisdiction, should not be granted any injunctive relief because of its failure to establish the necessary conditions which justify such extraordinary action.

Defendant's jurisdictional argument requires a review of the statutory basis for the court's injunctive powers. This court's injunctive authority over pre-award contracts is found in section 133 of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–614, 96 Stat. 25, 40 (1982). The exact language of that section, which appears in 28 U.S.C. section 1491(a)(3), provides that the court, in order—

> To afford complete relief on any contract claim brought before the contract is awarded, * * * shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief.

Fortunately, the CAFC in *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1366–67 (Fed.Cir.1983), has provided substantial guidance regarding the meaning of this amendment. The court in *Grimberg* concluded, in pertinent part, that:

> Subsection (a)(3) is thus part of a statute (section 1491(a)) in which Congress has defined the jurisdiction of the Claims Court to hear and determine suits and has spelled out actions the court may take in particular cases within that jurisdiction.

> \*   \*   \*   \*   \*   \*

> Further, a plaintiff may not obtain equitable relief just because a court has the power to grant it, but must state a claim which is itself within the jurisdiction of the court. Appropriately, therefore, subsection (a)(3) specifies the nature of the "claim" upon which declaratory judgments and equitable relief may be granted, namely a "contract claim". Subsection (a)(3) thus provides a new remedy in respect of a particular type of claim (contract) over which the court was granted jurisdiction in (a)(1) and does not provide that remedy in respect of other types of claims set forth in subsection (a)(1).

> Jurisdiction is granted in (a)(1) over a claim founded upon "any express or implied contract".

> \*   \*   \*   \*   \*   \*

> Thus (a)(3) made an equitable remedy available when a claim over which the court has jurisdiction (implied contract under (a)(1)) is filed in the court before a contract has been awarded. [Footnote omitted.]

In summarizing the types of cases that the court has found to come within the scope of its jurisdiction under section 1491(a)(3), Judge Wiese, in the case of *Cecile Industries, Inc. v. United States*, 2 Cl.Ct. 690 (1983), has fairly observed that:

> Cases deciding the scope of this jurisdictional grant have, to date, defined it as being limited to litigants who (i) may claim an implied contractual relationship with the United States on the basis of their submission of a bid in response to a Government solicitation * * * and (ii) as-

sert as their basis for injunctive relief a breach of that implied contractual relationship based upon the Government's alleged failure to have adequately and fairly considered their bid. [Citations omitted.]

However, this is hardly conclusive of whether section 1491(a)(3) was only intended to address the so-called "bid protest actions." Indeed, it does not appear that such a narrow reading of *Grimberg* was intended.

In *Grimberg,* the Court of Appeals for the Federal Circuit was concerned about the jurisdiction of the Claims Court over a disappointed bidder's post-award suit. Before the CAFC could establish whether section 1491(a)(3) granted jurisdiction to the Claims Court, it had to determine if the particular bidders had any "contract claim." 702 F.2d at 1366. It reasoned, harking back to our predecessor court's decision in *Keco Industries, Inc. v. United States,* 428 F.2d 1233 (Ct.Cl.1970), that a bidder does have a contract claim that falls within the section 1491(a)(3) language, and this specifically consisted of an "implied-in-fact" contract to have its bid fairly and reasonably considered. 702 F.2d at 1367.

The CAFC, however, was not trying to set forth the entire range of the Claims Court's jurisdiction under section 1491(a)(3), but rather to determine if the *Grimberg* case came within it. The most direct treatment in *Grimberg* of the problem of ascertaining the intended scope of the phrase "contract claim" is found in a footnote * which appears out of context with the earlier discussion of the bidders' implied-in-fact contracts, and in that footnote the CAFC acknowledges that the issue was never argued before the court. *Id.* at 1368–69, n. 11. I, therefore, find nothing in *Grimberg* which indicates that the CAFC wanted by its decision to rewrite section 1491(a)(3) to read "To afford complete relief on any [implied-in-fact] contract claim [of a disap-

pointed pre-award bidder] brought before the contract is awarded" and thus limit the Claims Court to pre-award disappointed bidder cases only.

■ Plaintiff in this case comes within a literal reading of section 1491(a)(3). Particularly, plaintiff alleges that it has an implied-in-fact contract with defendant that ensures it a right to bid on the solicitation at issue in exchange for certain of its proprietary data. Plaintiff therefore has presented a contract claim directly relating to the prospective award of a contract on that solicitation. Accordingly, this court has jurisdiction over plaintiff's case.

■ However, concluding that the Claims Court has jurisdiction over the case at bar is only one hurdle in the plaintiff's path. Defendant insists that it did not enter into an implied-in-fact contract with plaintiff, and therefore plaintiff's request for injunctive relief should be denied. I agree.

In the first place, defendant denies ever having received any proprietary information from plaintiff. At the July 7 trial, plaintiff did not supply any acceptable evidence to support its claim. Plaintiff, for example, did not point to any drawings disclosing its proprietary design that it gave to defendant. To the contrary, the evidence supports defendant's claims that it generated its own drawing package by a reverse engineering process. Even Mr. Lucker's testimony that he supplied defendant with information concerning the metallurgical makeup of the material for the cable grip was without detail. Thus, there was no testimony as to whom the information was given, or the exact nature of the alleged information. While, as plaintiff points out, the transfer of proprietary data can be the basis for an implied-in-fact contract with defendant, *see Padbloc Co. v. United States,* 161 Ct.Cl. 369, 377–80 (1963), it is necessary for plaintiff to show that it

---

* Use of the phrase "contract claim" in subsection (a)(3) appears incongruous in relation to a claim brought before an express contract exists. It is undisputed, however, that the phrase must necessarily be interpreted as referring to a claim *relating* to the prospective award of a contract, *i.e.,* to an implied contract that a contract bid will be fairly and honestly considered, or, in shorthand, to a "bid protest."

did submit confidential and proprietary information to defendant with the expectation of receiving something in return. Plaintiff has not shown any facts similar to those in *Padbloc.*

Plaintiff's argument that it entered into an implied-in-fact contract with defendant must be rejected for the additional reason that it has failed to establish that the alleged promises given to Mr. Lucker were made by government employees who had authority to bind the government. Our predecessor court has long warned that in dealing with the government the public must turn square corners. *See, e.g., Montilla v. United States,* 198 Ct.Cl. 48, 62, 457 F.2d 978, 985–86 (1972); *Nuss v. United States,* 127 Ct.Cl. 197, 207, 117 F.Supp. 413, 418–19 (1954). In *Grismac Corp. v. United States,* 214 Ct.Cl. 39, 49, 556 F.2d 494, 499 (1977), a case involving subject matter related to the case at bar, the Court of Claims found that there could be no implied-in-fact contract because defendant's officials had not been given authority to use appropriated funds to buy the mere suggestions of an outsider.

A similar theme runs throughout government litigation. For example, in *Max Drill, Inc. v. United States,* 192 Ct.Cl. 608, 624, 427 F.2d 1233, 1243 (1970), the court stated:

A person negotiating with an officer or agent of the Government must inform himself regarding the authority of such individual, since an officer of the Government cannot bind the Government with respect to matters beyond the limit of his authority. [Citations omitted.]

So here it was necessary for plaintiff to show that Mr. Lucker transferred his alleged proprietary information to a government employee who in exchange promised that Mr. Lucker would be permitted to bid on the solicitations which form the basis of this action. Plaintiff would, of course, also have had to show that this same individual had authority to bind the United States. Plaintiff has shown none of these necessary facts, and thus its claim of having an implied-in-fact contract to bid must be rejected.

Accordingly, as concluded at the completion of plaintiff's testimony of July 7, plaintiff's motion for a preliminary injunction is denied and defendant's motion for dismissal is granted.