**ALABAMA METAL PRODUCTS, INC., dba AMPCO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 610–83C.**

United States Claims Court.

Feb. 14, 1984.

Daniel J. Riley, Dallas, Tex., for plaintiff; Kathy C. Weinberg and Rain, Harrell, Emery, Young & Doke, Dallas, Tex., of counsel.

Stephen R. Bergenholtz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

This matter is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment and plaintiff's opposition thereto. At issue is a question on which the opinions of the Claims Court have expressed a difference of view: whether the court's injunctive authority under 28 U.S.C. § 1491(a)(3) (1976), *as amended by* Act of Apr. 2, 1982, Pub.L. No. 97–164, 96 Stat. 25, extends to contract actions challenging intended procurement awards on grounds other than the claimed denial of a fair opportunity to compete.

This court has answered that question in the negative: *Cecile Industries, Inc. v. United States,* 2 Cl.Ct. 690 (1983), defined the boundaries of our injunctive authority in disappointed bidder suits in terms of a procuring agency's contractually enforceable responsibilities to evaluate a bid fairly and honestly. In this action, plaintiff urges the court to reexamine this position. We have done so but find in the arguments offered no support for a different result. On the facts of the case and the law applicable thereto, the court holds that it is without jurisdiction. The motion to dismiss is therefore granted.

### Procedural Background

In a complaint for declaratory and injunctive relief filed here on October 6, 1983, plaintiff, a disappointed bidder, asked for a temporary restraining order and preliminary injunction barring the General Services Administration (GSA) from proceeding with an intended award under Invitation for Bids No. FNPS–S1–1532–A–9–2–83. Following an initial hearing, the parties jointly moved for a suspension of proceedings in order to permit the matter to be taken before the General Accounting Office (GAO) for decision. Pursuant to this motion, the Government agreed to postpone the intended award until the GAO had ruled on the matter.

The administrative decision was entered on December 12, 1983. In that decision, designated by file number B–213493, the GAO upheld the legality of the various procurement matters which plaintiff had challenged. Dissatisfied with this result and claiming GAO's decision to be wrong as a matter of law, plaintiff, by motion orally made on December 14, 1983, asked the court to preliminarily enjoin GSA from proceeding with the award and to schedule the matter for trial on a permanent injunction.

The request for temporary restraint was denied by the court. As to the demand for trial and permanent injunction, it was decided, for economy's sake, that resolution of the jurisdictional problem in the case ought to precede any trial on the merits. An appropriate briefing schedule was thereupon set. That having now been completed, and oral argument having been heard, the matter is ready for disposition.

### The Solicitation

The solicitation in question, issued August 1, 1983, involved a Federal Supply Schedule contract for an indefinite quantity of stackable beds and drawer units for purchase during the period July 1, 1983 through June 30, 1984. For bidding purposes, these requirements were divided into

two separate award groups—"Award Group 1" covering the beds and "Award Group 2", the drawer units. Within each group, bidders were required to submit a price for domestic and overseas shipments. Additionally, the award groups were further separated into geographic zones (Zones 1, 2, and 3), with each zone being assigned a "weight factor"—an indicator that expressed, in ratio form, the relative dollar volume between the prior year's per-zone sales and total purchase activity. The solicitation requested separate pricing in each of these three geographic zones.

Thus, for the drawer units upon which plaintiff bid, the schedule appeared roughly as follows:

| Weight Factors | Supplies or Services | Price |
|---|---|---|
| Zones | | Zones |
| 1 2 3 | | 1 2 3 |

===========================================

#### Award Group 2
#### Items 481–2(a) & 481–2(b)

| | | | | |
|---|---|---|---|---|
| 3 1 2 | 481–2(a) | Domestic Shipments | – – – |
| 4 1 2 | 481–2(b) | Overseas Shipments | – – – |

The solicitation's "method of award" clause advised that "[a]ward will be made in the aggregate by group for each zone" and that the low aggregate offeror "will be determined by multiplying the unit price offered on each item by the weight factor shown, and adding the resultant extensions." The clause also informed bidders that "[i]n order [to] qualify for an award on a group for a zone, prices must be offered on each item in the group for the zone."

While bidders were thus required to bid on each item in a group for a zone they were not restricted to that format. That is to say, "all or none" offers were acceptable. However, the solicitation cautioned that for requirements and indefinite quantity contracts (the situation here) such all-or-none offers "will not be considered unless the offer is low on each item to which the 'all or none' offer is made applicable."

Plaintiff submitted an all-or-none offer for the three geographic zones on which offers were sought. As it turned out, that offer was lowest in two of the three zones and lowest in the overall; on the remaining zone, however, it stood second low. In terms of the solicitation then, the bid was *not* "low on each item to which the 'all or none' offer [was] made applicable." The bid was therefore rejected; from that rejection this lawsuit followed.

### Discussion

#### 1.

Of the several grounds of attack that plaintiff raised in its complaint, the only matter that concerns us now is the contention that the solicitation unreasonably limited the acceptability of an all-or-none bid and, in so doing, violated the statutory directives of 41 U.S.C. § 253(b) (1976) (calling for award to the bidder whose bid "will be most advantageous to the Government") and 10 U.S.C. § 2305(a)(1982) requiring that invitations for bids "permit such free and full competition as is consistent with" the agency's needs.

As to specifics, the argument goes this way: If the weight factors set out in the solicitation are sufficiently reliable to permit—indeed, to require—aggregation of domestic and overseas bid prices for purposes of determining the lowest intra-zone bidder, then those same factors should also suffice to permit inter-zone aggregation of domestic and overseas bid prices for purposes of determining, *and awarding to,* the lowest overall bidder (*i.e.,* all-or-none bidder). The same numbers cannot logically be regarded as credible for one bid evaluation purpose and not another.

Therefore—the argument continues—to incorporate such an imbalance into an invitation for bids is to structure a solicitation that is fatally defective. To allow aggregation for one award purpose and not another is to say either that the weight factors have no inherent reliability, in which event the solicitation must be cancelled, or else that they are fully credible in which event the all-or-none bidder has been arbitrarily denied their competitive significance. In either case, says plaintiff, the admixture of

award schemes exhibited in the solicitation succeeds only in denying the Government the benefit of the lowest possible price.

2.

At the initial hearing of this matter, the court expressed the view that its authority under 28 U.S.C. § 1491(a)(3) extended only to actions asserting a breach of contract occasioned by Government conduct that unfairly or unlawfully denied a fair opportunity to compete for an award. By that jurisdictional standard, suits such as this one, seeking invalidation of a procurement action on grounds of an alleged statutory transgression that affects all bidders uniformly, are beyond the court's power to hear and decide. The holdings of *Ingersoll-Rand Co. v. United States,* 2 Cl.Ct. 373 (1983) and *Cecile Industries, Inc. v. United States,* 2 Cl.Ct. 690 (1983), were to this effect. In this proceeding plaintiff asks the court to reconsider these decisions, the contention being that they misconstrue the relevant statute, or, if not that, then at least that they read that statute much too narrowly.

The pertinent language of 28 U.S.C. § 1491(a)(3)—"to afford complete relief on any contract claim brought before the contract is awarded"—was seen by the court in *Ingersoll-Rand* as referring to two distinct contracts, the first an implied contract arising upon the submission of a bid; the second a prospective contract, the one yet to be awarded. The court's equitable jurisdiction, it was stated, embraced only the first of these two contracts for "[a]t the preaward stage * * * [the proposed] contract is not yet in existence and therefore cannot form the basis for our exercise of jurisdiction." 2 Cl.Ct. at 375.

It is this "dual contract" notion and particularly its accompanying jurisdictional constriction that plaintiff challenges. The way plaintiff sees it, the word "contract", as it appears in the phrase "brought before the contract is awarded", clearly refers to the contract that *is to be awarded;* thus— the argument continues—when the statutory language is considered in its entirety, it plainly means that we are to have jurisdiction on *any* claim *relating* to this prospective contract. In short, plaintiff views the two-contract construction as simply needless tinkering with words whose meanings stand plain on their face.

The problem with plaintiff's argument is that it overlooks the critically important fact that we are a court of limited jurisdiction whose subject matter jurisdiction, in the first instance, is rooted to demands for money. "[I]t is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money [footnote omitted]". *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). Historically speaking, "cases seeking relief other than money damages from the Court of Claims have never been 'within its jurisdiction.'" *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

■ Thus, when viewed in terms of this settled understanding of our jurisdiction, an enlargement of our power so as "to afford complete relief on any contract claim brought before the contract is awarded" can logically contemplate nothing more than a grant of equitable authority in respect to such pre-award contract matters *for which a money demand might otherwise be recoverable here.* To take it to mean more than this is to say, in effect, that Congress, through purporting only to "augment" our existing jurisdiction[1] in actuality

---

1. The report of the House Committee on the Judiciary, H.R.Rep. No. 312, 97th Cong., 1st Sess. (1981), defines the Claims Court's authority in terms of "cases that either come within the jurisdictional authority of the Tucker Act or that Congress specifically has authorized the court to determine", *id.* at 24, and in that context, goes on to describe the new grant of equitable authority as "modestly increasing the powers of the Claims Court * * *." *Id.* at 43. The same point appears even more explicitly in the Report of the Senate Judiciary Committee, S.Rep. No. 275, 97th Cong., 1st Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 11: "[S]ection 133 gives the new Claims Court the power to grant declaratory judgments and give equitable relief in controversies *within its jurisdic-*

redefined the subject matter jurisdiction of the court through a grant of equitable power that carries the meaning of the word "claim" in § 1491(a)(3) beyond the historical (and still controlling) limitations of that same term in § 1491(a)(1). Such an imbalanced perception of the statute was flatly rejected by *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1366–67 (Fed.Cir. 1983).

What it comes down to then is that the scope of our equitable jurisdiction under 28 U.S.C. § 1491(a)(3) is analytically determined by the term "claim" as a demand for money; hence a "contract claim brought before the contract is awarded" necessarily dictates the "dual contract" construction articulated in *Ingersoll-Rand*. In practical terms then, jurisdiction requires (i) an existing, contractually-enforceable right to an opportunity for a contract award and (ii) a breach thereof occasioned by unlawful or arbitrary Government action with a consequent likelihood of injury. Disappointed bidders that might otherwise be entitled to a recovery of their bid preparation costs become the chief, though certainly not the only,[2] beneficiaries of our enhanced powers.

■ Plaintiff's suit does not meet these requirements. Even if the contentions it makes with respect to the divergence in award schemes had merit (and on that we express no opinion) plaintiff has suffered no unfair denial of a contractually-based expectation: its bid was rejected in accordance with a standard for evaluation that was clearly spelled out in the solicitation. There is, therefore, no viable breach issue here; hence, no jurisdiction.

Plaintiff goes on to argue, however, that the recent decision in *United States v. CACI, Inc.-Federal*, 719 F.2d 1567 (Fed.Cir. 1983) endorses a much broader reading of our injunctive authority than that subscribed to here.

Among the issues that confronted the court in that case was the Government's contention that CACI, an unsuccessful bidder, lacked standing to press a claimed violation of the Ethics in Government Act, 18 U.S.C. §§ 207, 208 (1982) as the basis for seeking injunctive relief against a proposed award to a competitor. The court rejected this argument saying that "[t]he essence of 'the Scanwell doctrine,' which Congress intended 28 U.S.C. § 1491(a)(3) to make applicable to the Claims Court, is that an unsuccessful bidder has standing to challenge a proposed contract award on the ground that in awarding the contract the government violated statutory and procedural requirements." 719 F.2d at 1574.

Plaintiff focuses upon these quoted words, in particular, the reference to "statutory" requirements; it sees in this an affirmation of that broad-based jurisdiction upon which its own claim depends and, simultaneously, a repudiation of the narrower, contract-centered analysis expressed in this opinion.

Plaintiff's argument hits wide of the mark. This court has never said that the availability of injunctive relief under § 1491(a)(3) is limited to grievances that find their source in the four corners of a solicitation. To the contrary, to the extent statutes and regulations prescribe norms of conduct bearing upon the Government's obligation to observe fairness in the bid evaluation process, their violation marks the very essence of our concern. Thus, in *CACI*, the bidder had standing to assert a violation of the Ethics in Government Act for the charge there made, if true, would clearly have demonstrated an unlawful preference in the bid evaluation process and hence an abridgment of CACI's basic contract right to have its bid honestly and fairly considered by the Government.

Nothing of that sort is involved in this suit. The harm plaintiff complains of

---

tion." *Id.* at 22, 1982 U.S.Code Cong. & Ad. News at 32 (emphasis added).

**2.** *American Hoist & Derrick, Inc. v. United States*, 3 Cl.Ct. 198 (1983) and, more recently, *Yachts America, Inc. v. United States*, 3 Cl.Ct.

447 (1983) are two cases in which the contractual underpinning of the right to challenge an intended award arose out of facts independent of the submission of a responsive bid and the implied-in-fact contract thereby created.

abridges no legitimate contractual expectancy. It is, rather, a harm which, if it exists at all, is one that plaintiff shares with the public at large. Whatever judicial relief may be available to redress such a grievance, it is certain that none is available from this court for the absence of a contract basis for monetary relief forecloses injunctive relief as well.

## CONCLUSION

For the reasons expressed herein, defendant's motion to dismiss is granted and the complaint, as amended, is to be dismissed.

