STERLINGWEAR OF BOSTON, INC.,
Vi-Mil, Inc., Jerome Danin, and
Frank Fredella, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 454–86C.

United States Claims Court.

Aug. 13, 1986.

Anthony M. Fredella, Somerville, Mass., atty. of record, for plaintiffs.

Van Teasley, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION ON MOTION FOR PRELIMINARY INJUNCTION

REGINALD W. GIBSON, Judge:

I. *Statement of the Case*

This case comes before the court on plaintiffs' application for a preliminary injunction, defendant's opposition thereto, and defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiff, Sterlingwear, was the apparent low bidder on IFB–DLA–100–85–B–1327, a bid solicitation issued by the Defense Logistics Agency of the Department of Defense (DLA) on December 17, 1985, for the manufacture of 10,624 woman's overcoats with W-removable liners, at a price of $821,391.00. A pre-award survey (PAS) of plaintiff's competence to perform the contract was then conducted by the DLA which resulted in a unanimous recommendation of "no award" based on "commonality of management." Plaintiffs were notified by SBA's letter dated April 14, 1986, that DLA intended to reject its bid alleging lack of tenacity, perseverance, and capacity. These allegations were based not on the conduct of Sterling-

wear itself, but rather on the imputed conduct of one Vi-Mil, Inc., an entity allegedly possessing a "commonality" of ownership and management with Sterlingwear. In 1984, Vi-Mil had allegedly defaulted on nine similar clothing contracts with the government which had resulted in a substantial unpaid debt to the government.

In response to the SBA's invitation that plaintiffs file an application for a Certificate of Competency (COC), on April 25, 1986, they filed such an application with the SBA for an independent survey to determine whether Sterlingwear nonetheless qualified for a COC. Pursuant to 15 U.S.C. § 637, once a COC is issued, Sterlingwear would be entitled to the award of the subject contract as a matter of law. On May 7, 1986, the SBA disclosed to DLA (and the contracting officer) its intent to issue the subject COC stating that:

> It is the conclusion of the SBA/IS that *he finds no sufficient reason for a negative finding in the areas of Tenacity and Perseverance, and that an affirmative finding of both the SBA/IS and the PAS in the Credit and Capacity areas warrants the recommendation for the approval of Sterlingwear's application for a Certificate of Competency.*

(emphasis supplied; PX 10). The ultimate issuance of the COC was suspended, however, for five days, during which time the DLA had the right to appeal the SBA regional determination to the department headquarters in Washington, D.C.

DLA exercised its option to appeal the intended award of a COC to Sterlingwear in a six-page document outlining the failure of the SBA to consider the operative criteria, as well as challenging its substantive findings. Concurrent with the foregoing actions of DLA relative to Sterlingwear, the evidence also shows that DLA was then in the process of recommending the debarment of Vi-Mil, Inc., the corporation whose contract performance framed the predicate for the rejection of Sterlingwear's low bid on IFB–DLA–100–85–B–1327, plus the principal officers and affiliates (*i.e.*, Sterlingwear). Internal DLA memoranda dated

March 11, 1986, and April 15, 1986, confirm this proposed action. The basis for proposing debarment of Vi-Mil, *et al.* was related specifically to the previously mentioned allegations of default and outstanding debt on nine contracts held by Vi-Mil which were terminated by the DLA in 1984.

Despite DLA's previous independent consideration of the Vi-Mil debarment investigation and the Sterlingwear COC, a joint DLA memorandum was issued on July 3, 1986, recommending not only the debarment of Vi-Mil, but of Sterlingwear, as well as their common owners and management, Frank Fredella and Jerome Danin. The allegations contained in the recommendation memorandum were once again the same previously referenced nine contracts on which Vi-Mil had allegedly defaulted. Because Fredella was 50% owner of Vi-Mil, 100% owner of Sterlingwear, as well as the treasurer and president of the two companies, respectively, the DLA imputed his 1984 conduct and prior conduct relative to Vi-Mil to Sterlingwear. Similarly, as Danin was 50% owner of Vi-Mil, as well as its president, and was then treasurer and comptroller of Sterlingwear, DLA felt similarly obliged to also impute his 1984 and prior conduct relative to Vi-Mil to Sterlingwear. This was so in spite of the fact that the proposed debarment of Sterlingwear in 1986 was grounded on alleged conduct of Vi-Mil, Fredella, and Danin occurring prior to 1985. Thus, the independent conduct of Vi-Mil, Fredella and Danin, was imputed to Sterlingwear, causing allegedly a sufficient merging of identity of *all* parties to justify a recommendation of proposed group-debarment.

This proposed group-debarment resulted in an SBA decision to discontinue its efforts to award Sterlingwear a COC notwithstanding its favorable determination regarding Sterlingwear's entitlement to a COC. In a letter to DLA dated July 15, 1986, SBA therefore served notice that it was closing the Sterlingwear file because:

> Federal Acquisition Regulations 9.406–3(c)(7) prohibit DLA from contracting with the contractor pending a debarment decision, thereby making the subject firm ineligible for Certificate of Competency assistance during this period.

PAPP at 50. At this point, DLA proceeded with another PAS relative to the second low bidder, *i.e.*, Dale Fashions, Inc., which bid was some $29,853.44 *higher* than Sterlingwear's.

Immediately following notice of the SBA's decision to forego any further activity relative to the issuance of its COC, Sterlingwear petitioned this court on July 22, 1986, for a temporary restraining order (TRO) requesting that any award of IFB–DLA–100–85–B–1327 to Dale Fashions be enjoined pending the outcome of the debarment proceeding, and that the SBA be similarly enjoined from closing its file on the Sterlingwear COC. As grounds for the relief sought, plaintiffs aver as being without a rational basis both (1) the initial DLA decision to reject Sterlingwear's bid for lack of tenacity, perseverance and capacity based on an alleged "commonality" between Sterlingwear and Vi-Mil; and (2) DLA's decision to recommend the debarment of Sterlingwear on identical grounds. Plaintiffs also contend that the decision to debar has denied them due process of law "as any hearing provided by the Department of Defense regulations will not stay any action of the contracting officer or the SBA." In addition, plaintiffs allege DLA violated 15 U.S.C. § 637(b)(7)(A), (7)(C) by failing to award the subject contract to Sterlingwear upon SBA's initial "issuance" of the disputed COC. And finally, plaintiffs allege legal error in the SBA's decision to discontinue its award of the COC pending the outcome of Sterlingwear's proposed debarment.

Following the filing of the TRO on July 22, 1986, the court scheduled an immediate hearing. Because of defendant's representation to the court that it would forebear any award of the contract, as well as any suspension of activity on the COC until after midnight, August 1, 1986, the court denied plaintiffs' application for a TRO as moot. Thereafter, the plaintiffs filed the subject application for a preliminary as

well as a permanent injunction. A hearing on the preliminary injunction was held on July 31 and August 1, 1986. During that hearing, defendant verbally moved to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction. At the close of that hearing, defendant agreed to continue its stay of subject award until Monday, August 11, 1986, to allow time for a decision by the court. Subsequent complications arising in the mean time resulted in the need for an additional hearing on August 8, 1986, at which time defendant agreed to continue its stay of award until Wednesday, August 13, 1986.

## II. *Discussion*

Having outlined the relevant procedural and substantive posture of the case *supra,* we combine for purposes of discussion our findings of fact and conclusions of law. We first address defendant's motion to dismiss, which is granted in part and denied in part, and then proceed to consider the requisite elements and the operative facts which support our granting of plaintiffs' motion for a preliminary injunction.

### A. *Defendant's Motion To Dismiss*

Defendant's motion to dismiss specifically addresses only two of plaintiffs' claims as delineated above. First, defendant challenges plaintiffs' due process claim as one alleging a constitutional defect in the debarment regulations. According to defendant, "[p]laintiff can only be alleging that the debarment regulations are unconstitutional on due process grounds for its failure to provide prospective contractors with an opportunity to be heard prior to declaring them ineligible for award." Deft's Brief at 6. Plaintiffs have denied orally that this was the basis of any of their claims. Unfortunately, we disagree with plaintiffs' protestations as paragraph 18 [1] of their complaint indeed postures the claim indicated by the defendant.

It is defendant's position that constitutional challenges to procurement regulations, *on their face,* are not within the bid protest jurisdiction of this court. In essence, defendant argues that because jurisdiction for bid protests must rest on the implied-in-fact contract created by the solicitation and the bid, any challenge to a procurement regulation incorporated *within* the solicitation necessarily refutes plaintiffs' initial acceptance of *the terms* of that implied-in-fact contract. Without ever having accepted the terms of the implied-in-fact contract, defendant concludes, there is no such contract in existence upon which jurisdiction may be premised. Further, defendant contends that without an implied-in-fact contract, plaintiffs' other claims based on a violation of that implied-in-fact contract must also fail for lack of jurisdiction, regardless of whether on the merits a violation of such an implied contract does exist.

We believe defendant's precise argument, while indeed creative, is flawed as a matter of law. Nonetheless, the substance of defendant's assertion of lack of jurisdiction is indeed valid, at least in part, as to the constitutional due process claim. However, as discussed *infra,* we reach that conclusion on grounds which we believe are far more consistent with the scope of our equitable jurisdiction as interpreted by both this and our predecessor court, rather than those grounds presented by defendant.

Defendant's premise that claims for equitable relief arise out of 28 U.S.C. § 1491's implied-in-fact contract to fairly and fully consider a responsive bid to a valid federal procurement solicitation is, of course, correct. Defendant is in good company as it states: "A 'contract claim' under section 1491(a)(3) arises from the implied contract that exists by virtue of the bid solicitation process and that process guar-

---

**1.** Paragraph 18 of plaintiffs' complaint reads:

The action of the contracting officer in requesting debarment proceedings be instituted, effectively prohibits the Plaintiff, Sterlingwear, Inc., from being awarded the instant contract and any other contract without due process of law, as any hearing provided by the Department of Defense Regulations will not stay any action of the contracting officer or the SBA.

antees that responsive bids will be considered fully and fairly." DBrief at 7. *See United States v. Grimberg,* 702 F.2d 1362, 1367 (Fed.Cir.1983); *Quality Furniture Rentals, Inc. v. United States,* 1 Cl.Ct. 136 (1983); *Indian Wells Valley Metal Trades Council v. United States,* 1 Cl.Ct. 43, 553 F.Supp. 397 (1982); *Ingersoll-Rand Co. v. United States,* 2 Cl.Ct. 373 (1983); *Cecile Industries, Inc. v. United States,* 2 Cl.Ct. 690 (1983).

Where we part company with defendant, however, is when it states that plaintiffs somehow rejected that implied-in-fact contract, by raising constitutional due process issues regarding debarment regulations *after* Sterlingwear's bid was submitted, so that defendant's obligation to fully and fairly consider plaintiffs' bid never arose. Nowhere in the record evidence, argument, or testimony before this court is it shown that plaintiffs rejected the terms of the subject solicitation. On the contrary, plaintiffs prepared their bid, submitted it, the government opened it, and it was determined to be the low bid. At that point, all the requisite elements and activity necessary to create an efficacious implied-in-fact contract had at that posture occurred. Said contract, at *that* moment, was indeed a "fact." No case has required more, nor do we.

■ This, then, brings us to the plaintiffs' due process claim as we perceive it. Plaintiffs allege a denial of due process *not* for lack of fair or honest consideration on the merits of their bid, the so-called implied-in-fact contract, but rather because applicable DLA regulations provide them with a *post,* instead of a *pre*-suspension hearing. Plaintiffs argue fairness dictates that they be allowed a full hearing to rebut the debarment charges *prior* to their suspension from contracting—not a suspension *pending* a debarment proceeding and determination. Plaintiffs, in substance, assert this as a constitutional defect in DLA procurement regulations relative to debarment.

Viewed in this way, the challenge plaintiffs assert falls squarely within the con-

fines of this court's decision in *Cecile Industries,* 2 Cl.Ct. at 690. In that case, plaintiff challenged as unconstitutional the identical DOD–SBA procedures in issue here. Plaintiff in *Cecile* became the subject of a debarment proceeding which resulted in the same automatic suspension from all further government contracting as occurred here. In addition, there, like here, an SBA COC investigation was closed off pending the outcome of the proposed debarment. In response, plaintiff there raised a constitutional claim which mirrors that raised here: "A deprivation of the bidder's 'liberty interest' by allowing a finding of lack of integrity to have operative effect [through the debarment regulation] in advance of the bidder's opportunity to be heard on the issue." *Cecile,* 2 Cl.Ct. at 692.

On these facts and allegations, Judge Wiese dismissed the plaintiff's claim stating:

> Cecile's bid was disregarded by the Government, not for lack of adequate and fair consideration on the part of the contracting officer but rather by force of a regulation which decreed plaintiff's disqualification as an eligible bidder. Consequently, plaintiff ... asks that the court declare the offending regulation unconstitutional on due process grounds for its failure to provide prospective contractors with an opportunity to be heard before declaring them ineligible for award. Thus the claim on its face reaches beyond the limits of our historical bid protest jurisdiction and thus also beyond the present-day limits of our equitable authority in these matters.

*Cecile,* 2 Cl.Ct. at 693–94. In essence, the plaintiff in *Cecile,* like the plaintiffs here, asserted a claim relative to a regulatory obligation on behalf of the government. Said claim does not implicate, nor arise out of, the implied contract to fully and fairly consider all bids, but rather surfaced after the implied contract arose.

This is not to say, however, that *violations* of statutory or regulatory obligation

are not actionable. But rather, it is to say, as Judge Wiese held, that:

> The procuring agency's commitment—its implied promise ... is to fairly *apply* the regulations bearing on the evaluation of the offer and/or the offeror in place at the time the bid goes forward; *it is not that every such regulation will necessarily be fair. The last presents an issue substantively independent of the contractual relationship; hence it may only be vented in the district court.*

*Cecile,* 2 Cl.Ct. at 694 (emphasis added). Plaintiffs' due process *claim,* on the basis of the grounds premised herein, must be and hereby is dismissed for lack of subject matter jurisdiction.

█ Defendant's second and last assertion relative to lack of jurisdiction concerns plaintiffs' request for injunctive relief relative to the SBA's conduct.[2] In support of this proposition, defendant cites 15 U.S.C. § 634(b) which states, in relevant part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the [Small Business Administration] Administrator may—
>
> > (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; *but no ...* injunction ... or other similar process, ... *shall be issued against the Administrator or his property ....*

DBrief at 9. As asserted by defendant, we do acknowledge that this very language has been given conclusive effect by Judge Mayer in his decision in *Speco Corp. v. United States,* 2 Cl.Ct. 335 (1983).

This decision, however, is not binding precedent, and we respectfully decline to follow it. On the contrary, we believe that the lucid reasoning of Judge Miller in *Related Industries v. United States,* 2 Cl.Ct.

517 (1983), interpreting the very same statute, and similarly declining to follow *Speco Corp.,* to be far more persuasive. Without parroting Judge Miller's conclusions in *Related Industries,* we simply hold that defendant's motion to dismiss plaintiffs' claim for injunctive relief vis-a-vis the SBA Administrator is denied on the basis of those reasons expressed in *Related Industries,* 2 Cl.Ct. at 521.

### B. *Request for Preliminary Injunctive Relief*

█ With regard to the plaintiffs' request for injunctive relief, we believe that on the basis of the evidence adduced at the hearing and before the court, plaintiffs are entitled to a preliminary injunction pending a definitive determination of their proposed debarment. The following findings are made, therefore, in support of this conclusion:

(1) Denial of relief will visit immediate and irreparable harm on the plaintiff Sterlingwear inasmuch as it will need to engage in extensive post-award activities to restore the status quo. This is particularly unwarranted in light of defendant's failure to demonstrate any injury to itself which will be occasioned by this injunction;

(2) Plaintiffs have no adequate remedy at law;

(3) Plaintiffs have demonstrated sufficient cause to question the rationality of the DLA in denying their award as low bidder; and we so find that such evidence as was adduced reflects a substantial likelihood of success on the merits. In particular, we are cognizant of the facts that the SBA decided overwhelmingly in plaintiffs' favor on the issue of their COC; that plaintiffs have demonstrated the successful completion of *over 100* previously held government contracts; no previous debarment action was ever instituted against Vi-Mil, and, in fact, was specifically found to be unwarranted in the case of each

---

**2.** Plaintiffs seek a preliminary injunction, *inter alia,* against defendant's "agents" precluding "any action adverse to ... plaintiffs ... in relation to ... a Certificate of Competency ... presently pending before the Small Business Administration."

defaulted Vi-Mil contract; and that with the exception of the two 1984 annual reports (DXs 5 and 6), no credible evidence has been adduced to support defendant's conclusion of commonality between Vi-Mil and Sterlingwear over the relevant period;[3] and

(4) The grant of a preliminary injunction is in the public interest. We believe that Congress, in granting this court equitable jurisdiction in bid protest cases, sought to protect the integrity of small businesses, such as the plaintiffs', as well as the interest of the taxpayers in having the full benefit of the low bidder's services on a competitively bid contract. Here, plaintiffs' bid was approximately $30,000 below that of the second lowest bidder.

We act on plaintiff's application because we believe, as stated by the Second Circuit, that:

> To justify a[n] ... injunction it is not necessary that plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (*i.e.*, the balance of hardships tips decidedly toward plaintiff), *it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.*

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953). Such is the case here, as is testified to on the basis of the findings as listed above.

Accordingly, based on the foregoing considerations, the court HEREBY ORDERS that the defendant, including but not limited to the Department of Defense (DOD) and the Small Business Administration (SBA), its officers, agents, servants, employees and representatives and all persons acting in concert and participating with it, are ENJOINED, for a period to end with a

further order from this court following the defendant's transmission of a complete copy of the decision relative to plaintiff's now pending debarment proceeding before the DLA:

(1) from awarding or entering into a contract with anyone other than Sterlingwear for the lots of work covered by the solicitation IFB–DLA–100–85–B–1327, and

(2) from closing any file, entering any judgment or decision, or suspending any action relative to a final determination on plaintiff Sterlingwear's now pending COC before the SBA.

### III. *Conclusion*

Defendant's motion to dismiss, only on the basis of the discussion *supra, i.e.,* relative to the due process claim, is hereby granted; in all other respects it is denied. Plaintiffs' application for a preliminary injunction is granted subject to the terms and conditions stated herein.

THIS ORDER IS CONDITIONED ON PLAINTIFF STERLINGWEAR POSTING A BOND, NO LATER THAN 4:30 P.M., THURSDAY, AUGUST 14, 1986, IN THE AMOUNT OF SEVENTY–FIVE THOUSAND DOLLARS ($75,000.00), OR PROVIDE A SURETY WHO WILL FURNISH A BOND IN THE SAME AMOUNT, SUBJECT TO APPROVAL OF THE CLERK OF THIS COURT.

Issued at 3:00 P.M., August 13, 1986.

IT IS SO ORDERED.

---

**3.** We note, in addition, the equivocality of DLA's own attempt to distinguish the positive findings of the SBA as it states:

> Based on the past performance of Vi-Mil and the commonality of management between Vi-Mil and Sterlingwear the Contracting Officer *cannot make a positive determination of responsibility for Sterlingwear and proposed to reject their bid as non-responsible.* *See* DX 12 at 1.