**QUALITY FURNITURE RENTALS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 682–82C.

United States Claims Court.

Feb. 15, 1983.

Michael D. Morin, Washington, D.C., with whom were Asst. Atty. Gen. J. Paul McGrath, Charles G. Symmonds, Dallas, Tex., Thomas W. Peterson and T. Raymond Williams, Washington, D.C., of counsel, for defendant.

## OPINION

KOZINSKI, Chief Judge.

This case involves a proposed contract by the Army and Air Force Exchange Services (AAFES) to establish a furniture rental concession at Fort Carson, Colorado. Plaintiff, Quality Furniture Rentals, submitted a bid and then promptly brought this action to enjoin the award, alleging various irregularities. The motion for a temporary restraining order was denied as moot on December 30, 1982, upon defendant's representation that it would withhold the award pending a hearing on the motion for a preliminary injunction. The preliminary injunction hearing was held on February 4, 1983, at which time the court also considered defendant's motion for summary judgment.

## FACTS[1]

AAFES, a joint military command of the Army and the Air Force, is responsible for the worldwide operation of post exchange facilities on military installations.[2] AAFES regulations provide that services at post exchanges should generally be offered at prices at least 20% below market. Exchange Service Manual (ESM) 30–1, at §§ 7–4 to 7–7 (Oct. 5, 1982). The regulations also limit the types of merchandise and services AAFES may offer within the continental United States. AAFES Operating Policies, ¶ 2–1, App. B (Feb. 15, 1980, as amended); ESM 65–1, at § 6.1.2 (Aug. 1979); Department of Defense Directive 1330.9, Encl. 2, at § 1–102 (May 12, 1982).[3]

John S. Pachter, Wickwire, Gavin & Gibbs, Vienna, Va., with whom were Mark J. Stone, Arthur I. Leaderman and Dorn C. McGrath, Vienna, Va., of counsel, for plaintiff.

1. Plaintiff's factual allegations are deemed established only for purposes of resolving defendant's challenge to our jurisdiction. *See Connolly v. United States,* 1 Cl.Ct. 312 at 313 n. 1. (Cl.Ct.1982) (KOZINSKI, C.J.).

2. The Navy and Marine Corps operate separate exchange services.

3. Plaintiff contends that these limitations are imposed in order to minimize the impact of AAFES upon local commercial enterprises. *Cf.*

The bid solicitation here in issue, AAFES Solicitation No. OVER–80–11–82–967 (issued Dec. 10, 1982), requires that rental furniture be offered to military personnel at prices at least 20% below the rates prevailing in the local community.[4] In addition, the contractor agrees to pay AAFES a fee calculated as a percentage of the business done at the exchange. Each bidder determines the percentage it is prepared to pay and the award is made to the bidder who offers AAFES the most.

Plaintiff claims that the contract, if awarded, would have a ruinous effect on the furniture rental businesses in El Paso County, Colorado, where Fort Carson is located. The El Paso furniture rental market is serviced by three local firms of which Quality is one. To survive, each firm must have access to a share of the military market, since military personnel make up a full 60% of the potential customers for rental furniture. According to plaintiff, the fierce competition between the three local firms has kept furniture rental prices far below the national average. Current profits are therefore much less than the aggregate of the 20% markdown plus percentage commission that the concessionaire would have to give up under the proposed contract.

Plaintiff contends that award of the contract would give the successful bidder a monopoly over the crucial military market. The contract would serve as a vehicle for predatory below-cost pricing which would eventually drive competitors out of business, assuring the concessionaire a monopoly over the civilian market as well. The monopolist could then raise civilian prices with impunity, automatically ratcheting up military prices which are tied to civilian prices. *See* p. 138 & n. 4 *supra*.

On the basis of this scenario, plaintiff argues that the contract, if awarded, would violate federal and state antitrust laws. In addition, plaintiff claims that AAFES lacks authority to award this contract and that it failed to comply with various procurement regulations. Plaintiff seeks to have the contract enjoined or, in the alternative, to obtain a declaration that, if it should be the successful bidder, it would not incur antitrust liability for its performance under the contract.

Defendant argues that this court lacks jurisdiction to consider plaintiff's claims. In defendant's view, the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, limits the court's equitable jurisdiction to claims that the contract award process was tainted by illegality or impropriety which deprived the plaintiff of an opportunity to have its bid fully and fairly considered. Plaintiff, by contrast, views the court's jurisdiction as sweeping and argues that it may consider any illegality or impropriety which touches upon the proposed contract, whether it arises in the award process or as a result of the expected course of performance.

### DISCUSSION

Section 133(a)(3) of the FCIA, 28 U.S.C. § 1491(a)(3), tersely provides that this court is to exercise its new equitable jurisdiction "[t]o afford complete relief on any contract claim brought before the contract is awarded." Because the statute does not explicate the meaning of this language, the court has already been required to sift carefully through the legislative history and other background to the FCIA in order to divine Congress' intention as to the scope of the court's authority. *See Indian Wells Valley Metal Trades Council v. United States,* 1 Cl.Ct. 43 (Cl.Ct.1982) (WIESE, J.); *John C.*

Department of Defense Directive 1330.9, Encl. 2, at § 1–102 (May 12, 1982).

4. More precisely, the solicitation specifies the maximum prices that the concessionaire may charge for standard furniture groupings and basic items of a particular quality. For higher quality items, as well as items not specified, the price schedule requires that "the rental rates will reflect a visible customer savings of at least 20% in comparison to the equipment rental rates in the local community." Testimony at the hearing supported plaintiff's contention that the 20% discount on higher quality items would make rental of other items so unattractive by comparison that few, if any, leases of these cheaper items would be made.

*Grimberg Co. v. United States,* 1 Cl.Ct. 253 (1982) (WILLI, J.), *on appeal,* 702 F.2d 1362 (CA Fed.1983).

The *Indian Wells* case was brought by a group of federal employees who claimed they would be displaced if the proposed contract were awarded. The court held that it lacked jurisdiction to consider these claims because Congress intended jurisdiction to be limited "to those . . . cases—the so-called 'bid protest actions'—which, but for the enlargement of its powers, might otherwise have been actionable here as claims for money damages." at 45 *citing Keco Industries, Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233 (1970), and *Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409 (1956). *Keco* and *Heyer* involved suits by disappointed bidders who claimed that the agency had acted improperly in making the contract award. The Court of Claims asserted jurisdiction on grounds that the solicitation for bids had established an implied contract between the agency and parties submitting a bid, and that the contract required the agency to give all bids fair consideration. The agency's failure so to consider the bids constituted a breach of the implied contract, entitling the bidder to collect its damages, which consisted of bid preparation costs.

*Indian Wells* is distinguishable because the plaintiffs here did, in fact, bid on the contract in question, whereas the *Indian Wells* plaintiffs had not. The distinction is important because only parties who respond to an invitation for bid have the requisite relationship to the contracting agency (*i.e.,* the implied contract defined in *Keco* and *Heyer*) to invoke this court's jurisdiction under the Tucker Act. However, this difference merely moves the analysis back one step to a consideration of the terms of the implied contract between the plaintiff and the defendant to determine whether the alleged illegality violates these terms.

## A.  The Antitrust Claims

The terms of the implied contract between bidder and contracting agency were generally set forth in *Keco* and *Heyer.* As there analyzed, the agency has an obligation to consider fairly and fully a bid submitted in good faith in response to an invitation for bids. The wisdom, legality and collateral effects flowing from the proposed contract have no bearing on this relationship. No case in the Court of Claims or in the district courts under *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 864–65 (D.C.Cir.1970), suggests that a bidder (or any other party) may mount a pre-award challenge to a contract based upon these factors. *See generally, Indian Wells,* at 399 & n. 5.

As has been repeatedly noted, the Claims Court, like its predecessor, is a court of exceedingly limited jurisdiction because the cases before it are brought against the United States and waivers of sovereign immunity must be narrowly construed. *See United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941); *Kabua Kabua v. United States,* 212 Ct.Cl. 160, 167, 546 F.2d 381 (1976); *Connolly v. United States,* 1 Cl.Ct. 312 at 314. The court should therefore assert jurisdiction in novel areas only where it is clear that Congress intended the court to do so. This is particularly so where, as here, to accept plaintiff's claim "could readily place this court in the posture of attending to demands for injunctive relief in jurisdictional areas that are within the exclusive province of the district courts." *Indian Wells* at 399.

Antitrust claims fall squarely within the exclusive jurisdiction of the district courts. *See Kurek v. Pleasure Driveway & Park District,* 583 F.2d 378 (7th Cir.1978), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). There is no indication in the FCIA or its legislative history that Congress intended this court to consider such claims in determining bid protest actions. Indeed, the legislative history suggests much to the contrary. Section 133(a)(3) was described as "modestly increasing the powers of the Claims Court,"

H.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981), and as effecting no change in the state of the substantive law, S.Rep. No. 275, 97th Cong., 1st Sess. 23 (1981). In light of these indications of congressional intent that the court narrowly construe its new equitable jurisdiction, it would be wholly inappropriate for the court to adopt an interpretation of section 133(a)(3) which would explosively enlarge the types of claims we may consider. The court therefore declines plaintiff's invitation to assert jurisdiction over its antitrust claims.

### B. The Claims of Lack of Authority and Violation of Procurement Regulations

A much more difficult issue is presented by plaintiff's claims that the proposed contract violates AAFES regulations which limit the types of contracts the agency may procure and which specify the manner in which the procurement process must be carried out. Unlike plaintiff's antitrust claims, these claims fall within the court's general area of expertise and would not infringe upon the exclusive jurisdiction of the district courts. On the other hand, none of the pre-FCIA bid protest cases involved such claims. It is therefore difficult to ascertain whether Congress intended the court to consider such allegations in ruling on petitions for injunctive relief.

During the course of the hearing on the preliminary injunction, the court became convinced that assertion of jurisdiction would be appropriate at least with respect to plaintiff's claim that AAFES lacked authority to award the proposed contract. As noted earlier, *Keco, Heyer* and *Indian Wells* hold that an agency enters into an implied contract with potential bidders, such contract requiring a fair and full evaluation of each bid. Another term of the implied contract, this court reasoned, should be a warranty by the soliciting agency that it is, in fact, authorized to make an award. The imputation of such a warranty seemed to be appropriate since bidders doubtless rely on the agency's presumed authority to contract in preparing and submitting a bid. Based on this assumption as to the agency's authority, bidders incur significant expense in preparing the bid and yet might receive no return benefit if the agency fails to consider the bids because it determines that it lacks authority to make the award.

The court nevertheless denied the preliminary injunction because it did not appear that the proposed contract would fall outside the authority of AAFES since rentals of furniture (as opposed to sales) are not prohibited by the agency's regulations. A factual dispute remained as to whether the proposed rental concession is a subterfuge designed to circumvent the admitted prohibition against sales of household furniture.[5]

Subsequent to the hearing, the court considered the matter further and discovered additional guidance in the legislative history of the FCIA. Specifically, the Senate Report was found to contain the following language:

> [T]he Committee expects that the court will utilize the authority conferred upon it by [section 133(a)(3)] only in circumstances where the contract, if awarded, would be the result of arbitrary or capricious action by the contracting officials, to deny qualified firms the opportunity to compete fairly for the procurement award.

S.Rep., *supra*, at 23. While neither party cited this language in its argument, this expression of legislative intent appears to bear directly upon the question here in issue. Specifically, it indicates that Congress did not intend that this court consider every alleged irregularity involving an award but only those irregularities which would deny a contractor a fair opportunity to compete. The fact that the agency lacks authority to award the contract may result in some harm, as suggested above, but the harm is shared equally by all bidders. It does not operate to deny a particular bidder a fair

---

5. Counsel for defendant conceded the existence of this prohibition during the course of oral argument.

opportunity to compete for such award as may be made.

 Where the language of the statute is unequivocal, resort to the legislative history as a guide to congressional intent may not be appropriate. *Ex parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949); *Eastman Kodak Co. v. United States,* 1 Cl.Ct. 173 at 177 & n. 11 (Cl.Ct. 1982) (HARKINS, J.); *Opal Mfg. Co. v. USPS,* 553 F.Supp. 131 (D.C.1982). Conversely, where, as here, the language of the statute is nebulous, a clear expression of legislative intent must be given great weight. *See Steiner v. Mitchell,* 350 U.S. 247, 253–55, 76 S.Ct. 330, 334–335, 100 L.Ed. 267 (1955); *United States v. Public Utility Commission,* 345 U.S. 295, 315–16, 73 S.Ct. 706, 717–718, 97 L.Ed. 1020 (1953); *United States v. American Trucking Associations,* 310 U.S. 534, 535, 542–44, 60 S.Ct. 1059, 1061, 1063–1064, 84 L.Ed. 1345 (1940). In light of Congress' repeated admonitions that it did not change the state of the substantive law, *see* pp. 139–140 *supra,* and its unequivocal expression of intent that we limit our equitable jurisdiction to cases involving the denial of a fair opportunity to compete for a contract, this court cannot assert jurisdiction over plaintiff's claims of impropriety in other aspects of the procurement process.

Upon reconsideration of its initial ruling, the court concludes that it lacks jurisdiction over plaintiff's claims that the agency did not have authority to enter into the proposed contract. The court also lacks jurisdiction over claims of other improprieties in the procurement process because none of the purported improprieties are claimed to adversely affect plaintiff's opportunity to compete for the procurement award.

## CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's motion for a preliminary injunction is denied. The court also denies, for lack of jurisdiction, plaintiff's alternative request for a declaration that performance under the contract would not constitute a violation of the antitrust laws. The clerk is directed to dismiss the complaint with costs to the prevailing party.

IT IS SO ORDERED.