**INGERSOLL–RAND COMPANY,**
Plaintiff,
v.
**The UNITED STATES, Defendant.**
**No. 194–83C.**

United States Claims Court.

May 11, 1983.

J.P. Janetatos, Washington, D.C., with whom was Stephen A. McLaughlin, of counsel, for plaintiff.

Colvin W. Grannum, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

OPINION

KOZINSKI, Chief Judge.

This is an action to enjoin the award of a subcontract by Hawaiian Dredging and Construction Company, a government contractor. Plaintiff claims that the award, nominally to be made by the contractor, is in fact controlled by the United States, through its Naval Facilities Engineering Command (NAVFAC) which had awarded the principal contract to Hawaiian Dredging.

The United States admits to participation in the bidding process. The price of the subcontract, which calls for production of certain air compressors to be used by Hawaiian Dredging, is to be passed on to the United States on a cost-plus-award-fee basis. The United States therefore has an interest in assuring that the subcontract goes to the lowest bidder. NAVFAC drafted the terms of the request for quotations (RFQ), later issued by Hawaiian Dredging. NAVFAC also retained authority to approve the award of the subcontract.

Upon evaluation of the five bids received,[1] Hawaiian Dredging recommended award of the subcontract to Atlas Copco, the lowest bidder. NAVFAC was prepared to approve the award but before it could communicate its approval to Hawaiian Dredging, plaintiff filed this action. The government then agreed to withhold its approval of the award pending decision on plaintiff's request for a preliminary injunction.

In support of its request, plaintiff asserts that the NAVFAC personnel who prepared the RFQ for the subcontract were biased toward Atlas Copco, a producer of rotary air compressors. It asserts that these persons drafted the RFQ to give rotary compressors an advantage over the centrifugal type of compressors that plaintiff produces. This was accomplished, plaintiff suggests, by burdening centrifugal compressors with costly requirements that were not applied to rotary compressors. Plaintiff maintains that these requirements are unrelated to performance needs and invalidate the RFQ. Plaintiff also maintains that, even under the RFQ as written, its bid was not fully and fairly evaluated.

Defendant has moved for summary judgment, arguing that the court lacks jurisdiction to enjoin the award of a subcontract and, in the alternative, that the court may not issue an injunction on grounds that the terms of a bid solicitation do not comply with procurement regulations or are otherwise unfair or inappropriate.

1. There is a factual dispute as to whether Hawaiian Dredging or NAVFAC performed this evaluation.

## DISCUSSION

### A. *Award of Subcontracts*

Defendant argues that this court's injunctive authority is limited to cases involving proposed awards of contracts by the United States. It points out that, under the Tucker Act, a contractual relationship must exist between the plaintiff and the government as a condition to suit. Where, as here, the contract to·be awarded is between private parties—the contractor on the one hand, and potential subcontractors on the other—defendant suggests that the appropriate contractual relationship with the United States is lacking, and with it the jurisdictional linchpin for maintaining an action in this court.

Plaintiff responds that award of a subcontract under these circumstances closely parallels the award of a government contract. It points out that NAVFAC, the entity responsible for the principal contract, dictated the terms of the RFQ; participated (to a degree which is in dispute, *see* n. 1 *supra*) in the evaluation of bids; is wholly responsible for the cost of the subcontract; and has retained full approval authority over the award. In plaintiff's view, it would elevate form over substance to hold that the court lacks jurisdiction to review a contract award process which is virtually indistinguishable from normal government procurement. Plaintiff also points with alarm to the possibility that agencies will structure their contracts to circumvent this court's injunctive jurisdiction by nominally delegating to principal contractors the authority to award subcontracts while, in fact, maintaining full control over the award process.

This court's injunctive authority over pre-award contract cases derives from section 133(a) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–614, 96 Stat. 25, 40, codified at 28 U.S.C. § 1491(a)(3). This section is not a model of clarity. *See United States v. John C. Grimberg Co.*, 702 F.2d

1362 (Fed.Cir.1983) (majority, concurring and dissenting opinions); *Quality Furniture Rentals, Inc. v. United States,* 1 Cl.Ct. 136, 138, 141 (1983) (KOZINSKI, C.J.). Neither the language of the statute nor its legislative history seems to have anticipated the rich variety of factual and legal issues that this court has been required to consider in the first few months of its existence. *See, e.g., Speco Corp. v. United States,* 2 Cl.Ct. 335 (Cl.Ct.1983) (MAYER, J.); *Systems Architects, Inc. v. United States,* 2 Cl.Ct. 456 (1983) (NETTESHEIM, J.); *Quality Furniture, supra,* 1 Cl.Ct. 136; *Indian Wells Valley Metal Trades Council v. United States,* 1 Cl.Ct. 43 (1982) (WIESE, J.). This case once again presents a situation that may not have been fully anticipated, yet where the court must, as best possible, determine the scope of its injunctive authority.

■ Section 1491(a)(3) limits the court's injunctive authority to "contract claim[s] brought before the contract is awarded." This short phrase contains reference to two entirely different contracts. The second reference is to the contract which is the subject of the proposed award, *i.e.,* the contract for goods or services. At the pre-award stage, that contract is not yet in existence and therefore cannot form the basis for our exercise of jurisdiction. *Grimberg, supra,* at 1367 & n. 8. The first contract mentioned in section 1491(a)(3) is an implied-in-fact contract between the United States and bidders on the underlying contract. *See Keco Industries, Inc. v. United States,* 192 Ct.Cl. 773, 778, 428 F.2d 1233 (1970); *Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 69–70, 140 F.Supp. 409 (1956). This collateral contract arises from the bid solicitation process and guarantees that a bid submitted in conformity with the requirements of the invitation for bids will be fully and fairly considered. *See Keko Industries, supra,* 192 Ct.Cl. at 778, 428 F.2d 1233; *Heyer Products, supra,* 135 Ct.Cl. at 69–70, 140 F.Supp. 409; *Quality Furniture, supra,* 1 Cl.Ct. at 139. It is this implied contract which forms the jurisdictional basis for an exercise of this court's equitable authority.

■ It is clear from the logic of section 1491(a)(3), as so interpreted, that the first contract mentioned in that section—the implied contract for a fair evaluation of bids—must be one directly with the United States. If that contractual relationship with the United States is lacking, jurisdiction in this court cannot attach. The same cannot be said, however, as to the second contract mentioned in the section, *i.e.,* the underlying contract for goods or services. Since this underlying contract is not the basis for our jurisdiction over the bid protest, nothing in section 1491(a)(3) requires that the proposed contract be directly with the United States. Of course, if the United States is not to be a party to the underlying contract, it will be significantly more difficult for a plaintiff to establish that it has an implied contract with the United States for a fair evaluation of bids. However, such proof is not logically impossible.

■ It is conceivable that the government's control over the award of a subcontract could be so great, and its communications with potential subcontractors so direct and explicit, that a bidder could demonstrate the existence of an implied contract with the United States for a full and fair consideration of its subcontract bid. Such a showing would be an onerous one since the plaintiff would have to establish that someone authorized to contract on behalf of the United States made representations to potential subcontractors which gave rise to the implied contract of fair dealing. Nevertheless, the court is not prepared to say, at this early stage in the development of the statute, that such a showing could never be made.

Viewing the plaintiff's allegations in their most favorable light, it is conceivable that it could make such a showing. Under these circumstances, summary judgment on this issue is inappropriate.

B. *The Terms of the Bid Invitation*

Defendant stands on much firmer footing in its argument that a plaintiff may not

base an action for injunctive relief on a claim that the invitation for bids, here the RFQ, is unfair or improper. The court has had occasion to consider a very similar question in *Quality Furniture, supra,* 1 Cl.Ct. 136. In that case, plaintiff had argued that award of the contract would occasion a violation of the antitrust laws and that the invitation for bids failed to comply with applicable procurement regulations. The court ruled that it lacked jurisdiction to issue injunctive relief on either ground, holding that its authority to issue injunctive relief was limited to those cases which, prior to enactment of section 1491(a)(3), would have justified an action to recover bid preparation costs. 1 Cl.Ct. at 139, *citing Indian Wells, supra,* 1 Cl.Ct. 43; *Keko Industries, supra,* 192 Ct.Cl. 773, 428 F.2d 1233; *Heyer Products, supra,* 135 Ct.Cl. 63, 140 F.Supp. 409.

■ The jurisdiction of the court under section 1491(a)(3) is limited to situations where a bid complies with the terms of a bid invitation but is, nevertheless, not fully and fairly considered. It is the plaintiff's compliance with the solicitation that forms the consideration for the implied contract of fair dealing. This contractual right cannot entitle bidders to challenge the terms of the bid solicitation since the solicitation comes into existence before the implied contract and, in fact, forms the basis of that contract.

■ While statutes and regulations pertaining to the bid solicitation process require the United States to structure bids fairly and in a manner designed to assure the lowest cost, these provisions create statutory rather than contractual obligations. Thus, the United States owes bidders no *contractual* duty to comply with procurement regulations. Since our injunctive authority turns upon the existence of a contractual relationship, *see* p. 375 *supra,* a duty owed by virtue of statute or regulation cannot, under the plain terms of section 1491(a)(3), justify exercise of that authority.

■ Because the obligation to follow procurement regulations is statutory and not contractual, this court has no jurisdiction under section 1491(a)(3) to correct alleged errors in the bid invitation itself through issuance of an injunction. Defendant's motion for summary judgment is therefore granted as to that portion of plaintiff's complaint which challenges the terms of the RFQ.

### C. *Preliminary Injunctive Relief*

■ Plaintiff also argues that its bid was not given full and fair consideration under the terms of the RFQ as written. That portion of its claim remains viable. However, the court denies the preliminary injunction because it is unpersuaded that plaintiff is likely to succeed on the merits of its claim.

To succeed, plaintiff would have to establish that it had an implied contract with the United States for full and fair consideration of its bid and, further, that its bid was not so considered. It is quite evident that plaintiff's principal claim was that the RFQ was not fairly written; the claim that its bid was not given full consideration is somewhat of an afterthought. Given the burdensome showing plaintiff will be required to make in establishing that it has an implied contract with the United States, the chances for ultimate success must be deemed marginal.

### D. *Further Proceedings*

At the time of the hearing on these motions, the court made oral rulings and certified the question presented in part B of this opinion for interlocutory review pursuant to 28 U.S.C. § 1292(d)(2). However, by order dated May 5, 1983, the Court of Appeals for the Federal Circuit denied plaintiff's petition for interlocutory review.

To determine the course of further proceedings, the case is therefore set for a status hearing on May 19, 1983, at 10:00 a.m. in Courtroom 4, Room 501, National Courts Building, 717 Madison Place, N.W., Washington, D.C. 20005.

## CONCLUSION

Defendant's motion for summary judgment is granted in part and denied in part. Plaintiff's motion for a preliminary injunction is denied. The case is set for a status hearing on May 19, 1983.