**STELLACOM, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 91–1159C.**

United States Claims Court.

June 24, 1991.

Harvey G. Sherzer, Washington, D.C., for plaintiff.

Deborah Brinley, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge.

This case is before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court grants defendant's motion, and denies plaintiff's cross-motion.

## FACTS

Plaintiff, a Texas corporation involved in video film production and other television support services, currently is under contract to provide television support services

to the National Aeronautics and Space Administration (NASA) at the Lyndon B. Johnson Space Center, Houston, Texas. NASA awarded this contract, which will expire on August 31, 1991, to plaintiff under a total small business set-aside procurement.

On January 10, 1991, NASA issued a Request for Proposal (RFP) for television support services intended as a follow-on procurement to plaintiff's contract. This RFP also was a total small business set-aside. The solicitation documents included a Standard Industrial Code of 7819, Services Allied to Motion Picture Production, and attendant size standard of annual receipts not in excess of $14,500,000.00. Plaintiff submitted its initial proposal on February 21, 1991, self-certifying that it was a small business under Small Business Administration (SBA) regulations. Plaintiff determined its small business status relying on its calculation of revenues based upon the books of account and tax returns of its affiliated companies. Specifically, plaintiff included the revenues listed on the tax returns of its affiliate, Walter Bennett Company (WBC) as required by 13 C.F.R. § 121.401 (1991). WBC, an advertising agency, owns 72% of plaintiff's stock. NASA notified plaintiff that it was in the competitive range, and plaintiff submitted its best and final offer on April 17, 1991.

On March 12, 1991, Taft Broadcasting Company (Taft) submitted a protest to the SBA challenging plaintiff's small business self-certification, and requesting that the SBA render a size determination of plaintiff pursuant to 13 C.F.R. § 121.9 (1991). Because Taft's pre-award protest was premature, Stephen C. Cleland, the contracting officer, adopted Taft's protest as his own pursuant to 13 C.F.R. § 121.1603(b) (1991). In response to the contracting officer's protest, plaintiff submitted its tax returns and the tax returns of its affiliates, including WBC, to support its claim of eligibility as a small business.

Like other advertising agencies, WBC has a substantial flow of "client billings." These billings are monies WBC receives from its client advertisers and pays to media vendors on the clients' behalf. WBC purchases time or space in the broadcast or print media for its clients. The media vendor sends a bill to WBC which, in turn, sends the bill to the clients. The clients send payment for the media service to WBC, which then pays the vendor. WBC does not pay the vendor without first receiving payment from the clients. WBC receives a commission on these transactions, but does not treat the "pass through" client billings as income or revenue on its books of account. Neither are pass through billings reported as income or revenue on WBC's income tax returns. This is an accepted method of accounting and tax filing in the advertising industry. Excluding the pass through billings, plaintiff unquestionably would qualify as a small business. However, with the pass through billings included, the total yearly revenue of plaintiff and its affiliates exceeds the $14.5 million limit.

Pursuant to 13 C.F.R. § 121.402(b)(2) (1990), which explicitly permits only real estate and travel agents to exclude pass through billings from annual receipts calculated to support a size determination, the SBA Regional Officer (RO) issued a decision determining that plaintiff was other than a small business.[1] On April 21, 1991, plaintiff appealed the RO's decision to the SBA Office of Hearings and Appeals (OHA). On May 8, 1991, OHA affirmed the RO's determination that plaintiff was other than a small business, holding that pass through billings properly are included as revenue for purposes of determining the average annual receipts of an advertising agency.

On May 20, 1991, plaintiff filed a complaint seeking declaratory and injunctive relief, and a temporary restraining order to enjoin NASA from proceeding with its planned procurement. Plaintiff further asked the court to vacate the OHA size

---

1. 13 C.F.R. § 121.402(b)(2) excludes from the definition of receipts "amounts collected for another by a *travel agent or real estate agent....*"

(emphasis supplied). This language was added in 1990. Prior to the change, the regulation did not address the pass through billing issue.

determination as arbitrary, capricious, unsupported by evidence, and erroneous as a matter of fact and law; and to declare that plaintiff is a small business under applicable size standards. NASA voluntarily agreed to suspend all further action towards the award of the contract for 30 days in order to give the court an opportunity to decide plaintiff's size determination claim on the merits.

## DISCUSSION

Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact so that the moving party is entitled to judgment as a matter of law. RUSCC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Summary judgment is particularly appropriate in a case such as this which involves the limited review of an administrative decision of the SBA. *See Reel–O–Matic Sys., Inc. v. United States*, 16 Cl.Ct. 93, 94 n. 1 (1989).

A. Under · § 1491(a)(3), This Court May Not Consider The Validity Of Regulations Underlying A Request For Proposals.

The court's jurisdiction to hear plaintiff's claim derives from 28 U.S.C. § 1491(a)(3) (1990), which grants the Claims Court pre-award injunctive authority in contract cases. This authority is based upon an implied-in-fact contract, which arises between the government and all bidders on a government contract, that the government will consider all bids fully and fairly. *See Keco Indus., Inc. v. United States*, 192 Ct.Cl. 773, 428 F.2d 1233, 1237 (1970); *Heyer Prods. Co. v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409, 412 (1956). Therefore, the scope of this court's review is limited to whether defendant considered plaintiff's bid fully and fairly, *i.e.*, whether defendant properly applied to all bidders the SBA regulations pertaining to size determinations.

Jurisdiction predicated on an implied-in-fact contract does not grant this court the authority to review the validity of the SBA regulations themselves. *See Hero, Inc. v. United States*, 3 Cl.Ct. 413, 416–17 (1983); *Ingersoll–Rand Co. v. United States*, 2 Cl.Ct. 373, 376 (1983). The implied-in-fact contractual right does not provide a jurisdictional basis for a bidder to challenge the underlying regulations because those regulations came "into existence before the implied contract and, in fact, form[ed] the basis of that contract." *Ingersoll–Rand*, 2 Cl.Ct. at 376; *see also Eagle Constr. Co. v. United States*, 4 Cl. Ct. 470, 476 (1984). While the SBA may have a statutory duty to promulgate its regulations properly, it has no contractual duty to plaintiff to do so. *See Ingersoll–Rand*, 2 Cl.Ct. at 376; *see also Eagle Constr. Co.*, 4 Cl.Ct. at 476; *Downtown Copy Center v. United States*, 3 Cl.Ct. 80, 82 (1983); *Yachts Am., Inc. v. United States*, 3 Cl.Ct. 447, 450 (1983). This court's pre-award equitable authority under § 1491(a)(3) "turns upon the existence of a contractual relationship...." *Ingersoll–Rand*, 2 Cl.Ct. at 376. Therefore, under the plain terms of § 1491(a)(3), the court may not exercise its equitable authority to enforce a duty owed, not by contract, but by virtue of statute or regulation. *Id.* Consequently, this court is without authority to consider the validity of 13 C.F.R. § 121.402(b)(2), and is limited to determining whether the SBA properly applied the regulation as promulgated.

B. SBA's Determination That Only Travel And Real Estate Agencies May Exclude Client Billings From Annual Receipts Is Not Arbitrary Or Capricious.

1. *The court's scope of review of an administrative agency's interpretation of its own regulation is exceedingly narrow.*

The gravamen of plaintiff's complaint is that the SBA has permitted advertising agencies to exclude pass through billings from annual receipts calculations since 1961, *see Size Appeal of Allmayer, Fox & Reshkin Agency*, SBA No. 8, (1961), and that its 1990 decision to limit pass through exclusions to travel and real estate agents is arbitrary and capricious. Plain-

tiff further argued that, in light of thirty years of precedent, the pertinent language of 13 C.F.R. § 121.402(b)(2), must be non-exclusive, *i.e.*, while it specifically mentions only travel and real estate agents, it does not limit excludeable pass through billings to only those two types of agents. Plaintiff would have this court adopt a reading that also would allow other types of agencies, *e.g.* advertising agencies, to exclude pass through billings. This interpretation would conflict directly with the SBA's own interpretation of the regulation.

■ An administrative decision by the SBA is subject to judicial review. 5 U.S.C. § 706 (1990). However, the scope of review of a final determination by the SBA is limited narrowly. *E.g., Town of Fallsburg v. United States*, 22 Cl.Ct. 633, 642 (1991); *Three S Constructors, Inc. v. United States*, 13 Cl.Ct. 41, 45 (1987). The standard of review this court must apply is whether the decision of the SBA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). This court will not invalidate an SBA decision simply because it could reach a different result on the record, *Town of Fallsburg*, 22 Cl.Ct. at 645; *Three S Constructors*, 13 Cl.Ct. at 45, and will not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The court must afford great deference to an agency's interpretation of its own regulation. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see also Town of Fallsburg*, 22 Cl.Ct. at 641. The Court of Appeals for the Fifth Circuit aptly stated this principle:

> [When an agency interpretation] ... obviously incorporates quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme, judges should be particularly reluctant to substitute their personal assessment of the meaning of a regulation for the considered judgment of the agency. If the agency interpretation is merely one of

several reasonable alternatives, it must stand even though it may not appear as reasonable as some other.

*Allen M. Campbell Co. Gen. Contractors v. Lloyd Wood Constr. Co.*, 446 F.2d 261, 265 (5th Cir.1971). Therefore, this court must afford deference to congressional policy which places upon the SBA the responsibility for making size determinations. Applying this standard of review to the SBA's interpretation of the 1990 amendments which led to its determination that plaintiff is other than a small business, it is evident that the SBA size determination was not made in an arbitrary or capricious manner, nor was it an abuse of discretion or otherwise not in accordance with law.

### 2. SBA's interpretation of "annual receipts" is not suddenly "new."

Congress has empowered the SBA to administer a government procurement set-aside program under which government agencies contract with "small" firms as determined by the SBA within the meaning of its rules and regulations. 15 U.S.C. § 631 *et seq.* (1990). Under 15 U.S.C. § 634(b)(6), the administrator of the SBA has authority to promulgate regulations as necessary to implement authority granted by the Small Business Administration Act (Act). Under the Act, the SBA alone is responsible for determining whether a business is "small," and that decision is binding upon government procurement officers. The SBA bases its decision of whether a concern qualifies as small on the concern's annual receipts.

Plaintiff argued that SBA's "new" interpretation of annual receipts "creates an unjustified and unjustifiable distinction between real estate and travel agents on the one hand, and all other agents who perform in indistinguishable ways, on the other." The court disagrees with plaintiff's characterization of the interpretation as "new." SBA's "new" interpretation of annual receipts is not "new" in the sense that plaintiff suggested. Plaintiff repeatedly relied on thirty years of precedent in arguing that SBA's interpretation is "new" and therefore lacks a rational basis which, ordi-

narily, plaintiff would be justified in doing. But plaintiff cannot ignore the fact that, in this case, SBA recently promulgated amendments to the regulations which, according to SBA, overruled that precedent. Plaintiff simply glossed over that fact. Common sense tells us that thirty years of precedent do not necessarily control the interpretation of a new regulation. Therefore, SBA's current interpretation is not suddenly "new." Rather, the regulation is new. Plaintiff reasonably cannot believe that a new regulation necessarily must, or should, be interpreted in accordance with past precedent, especially with the addition of very specific language indicating the contrary.

*3. The heart of plaintiff's challenge goes to the validity of the regulation itself, not SBA's interpretation.*

Plaintiff conceded that the OHA regards 13 C.F.R. § 121.402(b)(2), adopted in 1990, as effectively overruling its earlier decision in *Allmayer, Fox, & Reshkin,* but argued that if this is the case, SBA's promulgation of the regulation was arbitrary and capricious. While that may or may not be so, it does not affect the SBA's interpretation of the regulation as promulgated. If plaintiff wishes to challenge the validity of the regulation, it may do so directly, but not in this court. However, the court will not sanction a back-door challenge to the regulation's validity couched as a challenge to a facially reasonable interpretation. Neither will the court adopt a contrived reading of the regulation and preamble so that plaintiff can avoid properly challenging the actual source of its discontent, *i.e.,* SBA's decision to adopt a regulation limiting the pass through exclusion to only real estate and travel agents.

The court acknowledges that the SBA established the practice of excluding pass through billings in the context of an advertising agency, and that this precedent stood unchallenged for thirty years. *See Size Appeal of Allmayer, Fox & Reshkin Agency,* SBA No. 8 (1961); *see also Size Appeal of D.K. Shifflet & Assoc.,* SBA No. 3081 (1989); *Size Appeal of Courtesy Assoc.,* SBA No. 2941 (1988); *Size Appeal of Morris Travel Corp.,* SBA No. 2228 (1985). Nevertheless, the SBA is well within its discretion in promulgating regulations that overturn established precedent, provided it follows certain established procedures. *See Boston Edison v. Federal Power Comm'n,* 557 F.2d 845, 848–49 (D.C.Cir.) *cert. denied* 434 U.S. 956, 98 S.Ct. 482, 54 L.Ed.2d 314 (1977); *National Retired Teachers Ass'n v. United States Postal Serv.,* 430 F.Supp. 141, 148 (D.C.D.C.), *aff'd,* 593 F.2d 1360 (D.C.Cir.1977). If the SBA fails to follow those procedures, the regulation is invalid. *National Retired Teachers Ass'n,* 430 F.Supp. at 148. SBA was within its statutory authority when, in accordance with the requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 552 *et seq.,* it published notice of proposed changes to its regulations pertaining to size determinations. *See* 52 Fed. Reg. 32,870 (1987). The SBA accepted comments for the requisite time period, and published the results of the final action on December 21, 1989. *See* 54 Fed.Reg. 52,-634 (1989).

The court cannot say whether the remainder of the promulgation process met the standards the SBA must meet when overturning longstanding policy. That determination, however, is irrelevant as plaintiff unequivocally denied challenging the regulation's validity.[2] The court must con-

2. Plaintiff, in its original brief, stated that "STELLACOM is entitled to summary judgment ... [on the grounds that] if OHA correctly interpreted SBA's regulations, then those regulations created an arbitrary and irrational distinction among businesses...." The court assumed plaintiff was suggesting that the regulation itself was invalid. However, at the court's request, plaintiff submitted a supplemental brief in which it explicitly denied challenging the regulation's validity. At oral argument, plaintiff again denied challenging the regulation's validity, claiming that OHA's interpretation, not the regulation as written, was faulty. Plaintiff argued against OHA's interpretation stating that there was no indication in either the preamble, or the regulation itself, that SBA was overturning longstanding policy, and that plaintiff's first possible indication of any change came when OHA determined plaintiff was other than small. As explained more fully *infra* section (B)(5),

clude, then, that plaintiff, in relying almost entirely on thirty years of precedent, apparently confused the distinction between challenging the validity of a regulation, and challenging the interpretation of a regulation as promulgated, a distinction this court finds crucial. Because the court will not address the issue of the regulation's validity, its analysis is limited to whether SBA's interpretation of the new regulation, as written, is reasonable.

### 4. The regulations are not silent on the meaning of "revenue."

The court first must look to the plain language of the regulation itself to determine the reasonableness of SBA's interpretation. 13 C.F.R. § 121.402(a) states that the SBA shall determine the size of a business concern by its "annual receipts." "Receipts" is defined as:

> all revenue, in whatever form received or accrued from whatever source, including from the sales of products or services, fees, or commissions, reduced by returns and allowances. However, the term "receipts" excludes proceeds from sales of capital assets and investments, proceeds from transactions between a concern and its domestic and foreign affiliates, proceeds from payments of notes receivable and accounts receivable, *amounts collected for another by a travel agent or real estate agent,* and taxes collected for remittance to *agent or real estate agent,* and taxes collected for remittance to a taxing authority.

13 C.F.R. § 121.402(b)(2) (emphasis supplied). Plaintiff argued that nowhere do the regulations define the term "revenue," and that terms not otherwise defined "shall have the meaning attributed to them by the I.R.S." 13 C.F.R. § 121.402(b)(5). Plain-

tiff further argued that the I.R.S. does not consider pass through billings "revenue" for income tax purposes, and offered the uncontroverted affidavit of Frank J. Kalis, a tax partner with KPMG Peat Marwick, in support of that assertion. According to plaintiff, if pass through billings are not "revenue," they cannot be considered a component of "receipts."

The court disagrees with plaintiff that the regulation is silent on the meaning of "revenue," and does not find it necessary to turn to I.R.S. interpretations to determine whether SBA meant to include pass through billings as revenue. While there is no explicit definition of the term, the court cannot ignore the implicit effect on the meaning of "revenue" of the specific exception of pass through billings for travel and real estate agents from "receipts." If "receipts" are made up only of "revenue," which they must be because the definition of receipts does not include any components other than "revenue," and pass through billings for travel and real estate agents are excluded from "receipts," then pass through billings must be "revenue" or there would be no need to exclude them from "receipts." Plaintiff argued that "common sense ... results in the rejection of this argument because it rests on the erroneous assumption that the terms 'receipts' and 'revenues' are interchangeable." Plaintiff is incorrect—the terms are not interchangeable. Under SBA's interpretation, "revenue" is made up of many different components, including pass through billings. "Receipts" includes all of those different kinds of revenue, minus certain exceptions. Put another way, "revenue" is an all-inclusive term while "receipts" is a selective word denoting a subset made up of certain types of revenue, but which categorically does not include those types of

---

plaintiff's failure to discern a change in policy more appropriately can be attributed to plaintiff's carelessness in reading, or perhaps failing to read, the preamble and the proposed and final amendments published in the Federal Register, than to a lack of any indication of a possible policy change. The court most kindly can describe as imprudent plaintiff's failure to question, at the time of the regulation's promulgation, the strong likelihood that the amendments cut off the pass through exemption to all

but travel and real estate agents. Further, plaintiff's size appeal was not the first time SBA interpreted the regulation as exclusive. On October 16, 1990, OHA explicitly stated that the 1990 amendments provided for the exclusion of client billings "only in the case of travel or real estate agents." *Size Appeal of Moody/Nolan, Ltd.,* SBA No. 3363. Therefore, plaintiff is incorrect in its assertion that, prior to its size appeal, it reasonably could have had no indication that the regulation established new policy.

revenue SBA specifically excluded. Under this interpretation, "receipts" and "revenue" are not interchangeable; "receipts" narrows the definition of "revenue."

The logical conclusion to be drawn from the specific exclusions is that, in the absence of the exclusionary language, SBA would have included all pass through billings in its calculation of receipts for size determination purposes for all types of businesses. However, the least chimerical—albeit barely so—conclusion the court can draw from plaintiff's argument would have this court adopt a definition of receipts which necessarily would include pass through billings as revenue for certain types of businesses, e.g. travel and real estate agencies—otherwise the exception from receipts would be superfluous, but not for others, i.e. advertising agencies.[3] Nowhere can the court find support for that reading of the regulation. It is an elementary canon of statutory construction that "the plain, obvious, and rational meaning of a [regulation] is always to be preferred to any curious, narrow, hidden sense...." *Chandler v. Roudebush,* 425 U.S. 840, 848, 96 S.Ct. 1949, 1953, 48 L.Ed.2d 416 (1976). The court cannot subscribe to plaintiff's argument that "revenue" does not include pass through billings for advertising agencies. Therefore, absent an applicable exception, plaintiff must include pass through billings in its determination of annual receipts.

*5. SBA evinced a clear intent to limit the pass through exclusion to only travel and real estate agents.*

The plain language of the regulation lists only two types of agents that may exclude pass through billings. *See* 13 C.F.R. § 121.402(b)(2). Plaintiff would have the court read the regulation as non-exclusive, arguing that "nowhere in the regulations, or the proposed regulations, does the SBA purport to make the exceptions exclusive...." But also nowhere in the regulations is there anything to suggest that the SBA did *not* intend this language to be exclusive. The exclusion is not preceded by any sort of non-restrictive modifier such as "for example" or "including." On the plain words of the final regulation alone, plaintiff's interpretation is anything but more reasonable than that of the SBA.[4]

The preamble to the final version of 13 C.F.R. § 121.402(b) further supports SBA's interpretation that the regulation was intended to limit to travel and real estate agents the exclusion of pass through revenues from the calculation of annual receipts as defined in 13 C.F.R. § 121.-402(b)(2). After the note and comment period, the SBA altered the language so that the final regulation specifically exempted only those two classes of agents. This was a distinct change from the proposed language which did not enumerate specific types of agents that could exclude pass through revenue, but rather spoke of

---

**3.** Plaintiff, throughout its initial briefs, ignored the fact that its argument would force this unreasonable definition, and insisted that the plain words of the regulation supported its interpretation. However, in its final brief, plaintiff, apparently realizing that it seriously could not expect the court to endorse such a convoluted reading of the regulation, and while clinging steadfastly to its argument that client billings are not "revenue," and therefore not "receipts," amazingly stated that "the enumerated exceptions are simply beside the point." Aside from being weak grammatically, that statement is ludicrous. Plaintiff, presumably, would have this court ignore specifically included language, and instead "impermissibly impute a useless act to [SBA's promulgating body]" rather than adopt the plain meaning of the regulation's words. *See South Corp. v. United States,* 690 F.2d 1368, 1374 (Fed.Cir.1982); *see also* 2A SUTHERLAND STATUTORY CONSTRUCTION, § 46.06 (4th ed.

1984). Such a construction "must be viewed as unsound and rejected." *South Corp.,* 690 F.2d at 1374.

**4.** Interestingly, plaintiff would have the court read the agent list as non-exclusive, although not preceded by any non-restrictive terms, but suggested that client billings cannot be revenue because they are not contained "within the enumerated sources of revenue" listed in § 121.-402(b)(2), a phrase which *does* contain the non-restrictive modifier "including." This observation raises two points: (1) When SBA wishes to make a phrase non-restrictive, it knows how to do so, thereby undercutting plaintiff's argument regarding the non-exclusivity of the exemption for travel and real estate agents; and (2) Plaintiff's reading, which inserts imaginary non-restrictive modifiers, and ignores existing non-restrictive modifiers, is absurd.

"agents" in general. *See* 52 Fed.Reg. 32,-871–72 (1987). The SBA clearly pointed out this change in the preamble stating that:

SBA did amend [§ 121.402] in one respect, however. In order to reduce confusion and avoid charges of vagueness, the language excluding amounts collected as an agent for another has been deleted. In its place new language has been inserted excluding *only income received by real estate agents and travel agents* in the form of gross bookings to be remitted to third parties. *In such cases,* only the commissions earned from such gross bookings are to be counted as income.

54 Fed.Reg. 52,636 (1989) (emphasis supplied).

The court cannot imagine a more definite indication of intent than this clear-on-its-face statement. Both the "only" modifying "income received by real estate agents and travel agents," and the "[i]n such cases" [5] prefacing the following sentence, support OHA's interpretation that SBA meant for this exception to be exclusive. Nevertheless, plaintiff stated that "like the regulations, the preamble does not limit the exclusion to travel and real estate agencies." That statement is more than somewhat disingenuous. Plaintiff focused on the phrase "in such cases" noting that this suggests the enumerated classes of agents merely are examples. Plaintiff is correct that an alternate definition of "such" connotes things "[o]f the same class, type, or sort; in the same category; similar...." *Webster's New International Dictionary* 2518 (2d ed.1957). However, the court cannot say that plaintiff's choice of definitions is more reasonable than the SBA's choice, especially in light of the "only" modifying "income received by real estate agents and travel agents" in the preceding sentence, which plaintiff conspicuously failed to explain away.

**6. *Prior practice and precedent are not dispositive indications of the proper interpretation of a new regulation.***

Plaintiff relied upon prior practice in size appeal case law of occasionally reading exceptions in the regulations as non-exclusive. In *Size Appeal of D.K. Shifflet & Assoc.,* SBA No. 3081 (1989), OHA stated that:

In addition to the five exclusions from gross revenues explicitly permitted by the regulation, size-appeal case law has, on occasion, indicated that it can be allowable to exclude monies received by a concern which is acting as an agent for another or which serves as a mere conduit for funds. [6]

However, this decision came before the 1990 amendments, and in no way stands for the proposition plaintiff advanced, *i.e.,* that case law can read exceptions into the regulations in the face of clearly stated conflicting intent. Where there exists an adopted regulation which mentions only travel and real estate agents, and a published preamble which specifically limits the exception to travel and real estate agents, the court cannot discount the SBA's interpretation that the phrase in the regulation is exclusive. Plaintiff's argument that such an interpretation is arbitrary and capricious is without merit.

Plaintiff spent a great deal of time and effort detailing the history of SBA size standards governing advertising agencies. While this information possibly could support the interpretation plaintiff advanced, it merely demonstrates the obvious—that any regulation is subject to more than one interpretation. It does not, however, demonstrate that plaintiff's interpretation is the only reasonable interpretation. In fact, plaintiff's interpretation requires a certain amount of mental and judicial gymnastics in order to get around the plain language of the regulation. Because this court is bound by an unwaveringly narrow scope of

---

5. *Webster's New International Dictionary* 2518 (2d ed. 1957), lists, as one definition of the word "such": "[b]efore mentioned; previously characterized or specified...."

6. The court notes that the quoted language, upon which plaintiff relied, indicates that, but for a specific exclusion, client billings are, indeed, "revenue."

review, it cannot adopt plaintiff's interpretation so long as SBA's interpretation rests on some logical basis—as it does in this instance on the plain words alone. Arbitrary and capricious is a difficult burden to meet, and here plaintiff has not come even close. Plaintiff's protracted examination of past size standards for advertising agencies, while not entirely irrelevant to an examination of SBA's interpretation of the regulation, more appropriately applies to an argument that the SBA improperly promulgated the 1990 amendments, an argument not before this court.[7]

7. *The preamble to the final regulations acknowledged making substantive modifications to existing SBA policies.*

Plaintiff found support for its position in the preamble which states that in promulgating the new regulations, SBA was "clarifying existing ambiguities" and "conforming the rules to present SBA policies and precedents." However, this language comes from the preamble to the summary of the final regulations which addressed all changes made to the size determination regulations, and did not apply exclusively or particularly to § 121.402(b)(2). Plaintiff's reliance on this broad introductory language is suspiciously selective as it fails to consider the entire sentence from which the above quoted language was taken. The entire sentence reads:

> The final rule is intended to improve the conceptual framework of small business size standards by reorganizing the current rules to obtain a more logical pro-

gression, by clarifying the existing ambiguities in the current rules, by conforming these rules to present SBA policies and precedents, *and by providing slight substantive modifications where necessary.*

54 Fed.Reg. 52,634 (1989) (emphasis supplied).

The general language in the summary portion of the preamble obviously applies to all the amendments as a whole, and not just to the exclusion of pass through revenues. Compared to the magnitude of the issues addressed by the 1990 amendments, the court cannot say absolutely that the SBA would be arbitrary or capricious in labeling its decision to limit the pass through exclusion to travel and real estate agents a "slight substantive modification."[8] But by failing to acknowledge or give weight to the inclusion of this and other very specific language in the preamble and the regulation, it is plaintiff that is arbitrary and capricious in claiming that SBA could not have meant to alter past policy.

C. SBA Is Not Bound To Consider Only Tax Returns In Making Its Size Determination.

 Plaintiff argued that 13 C.F.R. § 121.402(d)(1) "explicitly give[s] a party the right to rely on its tax returns to determine annual receipts...." Plaintiff does not include its client billings as revenue on its tax returns. SBA argued that it may consider other information, and that § 121.-402(d)(1) does not require SBA to accept a concern's tax returns as the only proof of

---

7. In conjunction with its advertising agency size standard history lesson, plaintiff argued that the effect of the new regulation was to change the size standard for advertising agencies "to a fraction of its former size" in contravention of 13 C.F.R. § 121.501 (1991), which requires the SBA to publish any proposed size standard changes in the Federal Register along with information regarding the effect of the proposed changes upon small businesses. First, the court notes that § 121.501, relied upon by plaintiff, went into effect on January 1, 1990, and therefore did not apply to changes made simultaneously with its promulgation. But that observation is beside the point because the changes wrought in § 121.402(b)(2) deal with the definition of the term "receipts," and clearly are not size stan-

dards. The size standard for advertising agencies was, and still is, $3.5 million. While the changes may affect the calculation of receipts for purposes of determining size, they are not changes to the size standard itself. Even were the court to consider the definition of "receipts" to be a *de facto* change to the size standard, plaintiff's argument again would go to the propriety of the regulation's promulgation, not to the interpretation of the regulation as written.

8. If SBA was arbitrary and capricious in labeling this substantive change "slight," that argument, once again, goes to SBA's promulgation of the regulation, not its interpretation.

its size. The court cannot say that SBA's interpretation of § 121.402(d)(1) is arbitrary or capricious. The language of the regulation merely is permissive, not mandatory, stating that "if the concern so elects, ... then revenue as shown on the Federal Income Tax return of the concern *may be used* in determining annual receipts." *Id.* (emphasis supplied).

The court cannot read this language as requiring SBA to look only at plaintiff's income tax returns. The plain language merely permits the use of returns as one method of determining receipts; it does not state that tax returns shall determine receipts, nor does it state that SBA is bound by plaintiff's choice of what materials it wishes to submit, nor does it say a concern may "rely" on its tax returns, as plaintiff argued. Furthermore, the regulations do "not permit a firm to select an accounting practice that, however established and acceptable to the accounting industry, will circumvent the unequivocal mandate in § 121.402(b)(2) that the exclusion for [pass through revenues] be limited to travel agents and real estate agents." *Size Appeal of Moody/Nolan*, SBA No. 3363 (1990). Conversely, the regulations explicitly do permit SBA to consider any relevant evidence pertaining to size. 13 C.F.R. § 121.1606(c). This is in line with the SBA's history of decision making regarding size determinations. "A concern's gross receipts for size purposes are evidenced by its books of account and its returns filed with the IRS; but the Board has not always considered them as absolutely controlling." *Size Appeal of Moody/Nolan*, SBA No. 3363 (quoting *Size Appeal of Ensec Serv. Corp.* SBA No. 1272 (1979)).

While 13 C.F.R. § 121.402(d)(1) certainly allows a concern to submit its tax returns as evidence of annual receipts, it does not supersede the specific language of 13 C.F.R. § 121.402(b)(2) which defines receipts as including pass through billings for all concerns except travel and real estate agents. Thus, the regulations do not require SBA to ignore factors not included in plaintiff's income tax returns, such as pass through billings, in making its size determination. Plaintiff simply is wrong

when it states that this interpretation "read[s] subsection (d)(1) ... out of the regulation." Plaintiff still has the option of submitting its tax returns as proof, though not dispositive proof, of its annual receipts. That is all the regulation specifically guarantees.

## CONCLUSION

Throughout oral argument, plaintiff repeatedly stated that it is entitled to some form of judicial relief. The court unequivocally disagrees that plaintiff is entitled to relief here. Whether or not plaintiff is entitled to relief in another forum, this court cannot say, but plaintiff must go to the proper court to receive what it seeks. This court cannot expand its jurisdiction to grant plaintiff, however worthy, judicial remedies it does not possess. The court, and undoubtedly plaintiff, realizes that should plaintiff chose to challenge the regulation's validity in district court, and ultimately prevail, that triumph would not come in time to establish plaintiff's eligibility for the procurement that is the subject of this litigation. While cognizant of plaintiff's desire to be eligible for the follow-on contract, this court cannot permit plaintiff to pursue here an argument that belongs in the district court simply so that plaintiff can invoke this court's injunctive authority to halt the government procurement process. Injunctive relief is an extraordinary remedy, and this court will not exercise its injunctive powers so that plaintiff can compensate for its failure to stay abreast of SBA actions affecting its eligibility.

The SBA, acting pursuant to Congressionally granted authority, promulgated amendments to the regulations pertaining to the determination of a business concern's annual receipts for purposes of small business set-asides. The regulations specifically permit, and the preamble explicitly delineates, that only real estate and travel agencies may exclude pass through billings from their determinations of average annual receipts. SBA has interpreted this language as exclusive. This interpretation not only is reasonable, facially, it is the *most* reasonable. The court will not sec-

ond guess SBA by declaring that it meant to include other agencies, specifically advertising agencies, along with travel and real estate agencies in 13 C.F.R. § 121.-402(b)(2). SBA properly applied the plain language of the regulation to plaintiff in determining that it is other than a small business. The court therefore upholds the decision of the OHA, denies plaintiff's request for declaratory and injunctive relief, grants defendant's motion for summary judgment, and denies plaintiff's cross-motion for summary judgment. The Clerk of the court is directed to enter judgment dismissing the complaint. Costs to defendant as the prevailing party.

IT IS SO ORDERED.